# EXHIBIT "A"

Filing # 74248456 E-Filed 06/28/2018 01:59:41 PM

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

JEANNINE MALLARD,                           CIRCUIT CIVIL DIVISION

Plaintiff,                                  CASE NO.: CACE 17022427
                                            DIV: 08 – Judge David A. Haimes
v.

U.S. STEM CELL, INC., f/k/a BIOHEART, INC.,
US STEM CELL CLINIC LLC,
REGENESTEM, LLC,
REGENESTEM NETWORK, LLC,
KRISTIN C. COMELLA,
SHAREEN M. GREENBAUM, M.D.,
HOLLYWOOD EYE INSTITUTE, P.A.,
GLOBAL STEM CELLS GROUP, INC., a/k/a
GLOBAL STEM CELLS GROUP, LLC,
STEM CELL TRAINING, INC.,
PAVILLION FOODS, INC., d/b/a PALM SUPPLY,
PAVILLION SCIENTIFIC, INC.,

Defendants.
_____/

## SECOND AMENDED COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL

1

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

# Table of Contents

Introduction ...................................................................................................................6

Jurisdictional Statement and Identification of the Parties.........................................6

Compliance with Conditions Precedent & FLA. STAT. § 766.106(2)...........................8

Certificate of Counsel ..................................................................................................8

Facts Giving Rise to the Actions.................................................................................9

A.   The U.S. Stem Cell Defendants Promise to Provide Effective Stem Cell Therapy.9

B.   The U.S. Stem Cell Defendants Design, Formulate and Produce Stem Cell Therapy................................................................................................................10

C.   Defendant Dr. Greenbaum Agrees to Lead a Clinical Trial, Without Any Experience or Formal Training. ...............................................................................13

D.   Defendant Dr. Greenbaum Begins Performing Stem Cell Therapy Surgeries and Realizes the Clinical Trial to be a Scam. .........................................................14

E.   Defendants Convince Ms. Mallard to Participate in the Clinical Trial...............16

COUNT 1   Express Warranty, U.S. Stem Cell, Inc..................................................19

COUNT 2   Express Warranty, US Stem Cell Clinic LLC ........................................20

COUNT 3   Express Warranty, Regenestem, LLC ....................................................22

COUNT 4   Express Warranty, Regenestem Network, LLC .....................................23

COUNT 5   Express Warranty, Kristin C. Comella.....................................................25

COUNT 6   Implied Warranty of Merchantability, U.S. Stem Cell, Inc. ...................26

COUNT 7   Implied Warranty of Merchantability, US Stem Cell Clinic LLC ............27

COUNT 8   Implied Warranty of Merchantability, Regenestem, LLC ......................28

COUNT 9   Implied Warranty of Merchantability, Regenestem Network, LLC .........29

COUNT 10   Implied Warranty of Merchantability, Kristin C. Comella ..................30

COUNT 11   Implied Warranty of Fitness for a Particular Purpose, U.S. Stem Cell, Inc. .......................................................................................................................31

COUNT 12   Implied Warranty of Fitness for a Particular Purpose, US Stem Cell Clinic LLC .............................................................................................................32

COUNT 13   Implied Warranty of Fitness for a Particular Purpose, Regenestem, LLC .......................................................................................................................33

COUNT 14   Implied Warranty of Fitness for a Particular Purpose, Regenestem Network, LLC.............................................................................................................33

2

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

COUNT 15   Implied Warranty of Fitness for a Particular Purpose, Kristin C.
Comella ....................................................................................................34

COUNT 16   Strict Liability, Manufacturing Defect, U.S. Stem Cell, Inc. ...............35

COUNT 17   Strict Liability, Manufacturing Defect, US Stem Cell Clinic LLC........36

COUNT 18   Strict Liability, Manufacturing Defect, Regenestem, LLC ..................37

COUNT 19   Strict Liability, Manufacturing Defect, Regenestem Network, LLC.....38

COUNT 20   Strict Liability, Manufacturing Defect, Kristin C. Comella.................39

COUNT 21   Strict Liability, Design Defect, U.S. Stem Cell, Inc. ...........................40

COUNT 22   Strict Liability, Design Defect, US Stem Cell Clinic LLC...................41

COUNT 23   Strict Liability, Design Defect, Regenestem, LLC...............................43

COUNT 24   Strict Liability, Design Defect, Regenestem Network, LLC ................44

COUNT 25   Strict Liability, Design Defect, Kristin C. Comella ...........................45

COUNT 26   Strict Liability, Failure to Warn, U.S. Stem Cell, Inc. ......................46

COUNT 27   Strict Liability, Failure to Warn, US Stem Cell Clinic LLC................47

COUNT 28   Strict Liability, Failure to Warn, Regenestem, LLC...........................49

COUNT 29   Strict Liability, Failure to Warn, Regenestem Network, LLC .............51

COUNT 30   Strict Liability, Failure to Warn, Kristin C. Comella ........................53

COUNT 31   Negligence, Product Liability, U.S. Stem Cell Clinic, Inc....................55

COUNT 32   Negligence, Product Liability, US Stem Cell Clinic LLC ....................56

COUNT 33   Negligence, Product Liability, Regenestem, LLC ................................58

COUNT 34   Negligence, Product Liability, Regenestem Network, LLC .................59

COUNT 35   Negligence, Product Liability, Kristin C. Comella .............................60

COUNT 36   Negligence, Kristin C. Comella............................................................62

COUNT 37   Negligent Misrepresentation, Kristin C. Comella ...............................63

COUNT 38   Vicarious Liability for Kristin C. Comella's Acts, U.S. Stem Cell Clinic,
Inc. .........................................................................................................63

COUNT 39   Vicarious Liability for Kristen C. Comella's Acts, U.S. Stem Cell Clinic,
LLC .........................................................................................................64

COUNT 40   Professional Negligence, Shareen Greenbaum, M.D. .........................65

COUNT 41   Vicarious Liability for Shareen Greenbaum, M.D.'s Acts, Hollywood
Eye Institute, P.A...................................................................................66

COUNT 42   Express Warranty, Global Stem Cells Group, Inc................................67

COUNT 43   Express Warranty, Stem Cell Training, Inc. .......................................68

COUNT 44   Implied Warranty of Merchantability, Global Stem Cells Group, Inc. 70

3

COUNT 45   Implied Warranty of Merchantability, Stem Cell Training, Inc...........71

COUNT 46   Implied Warranty of Fitness for a Particular Purpose, Global Stem Cells Group, Inc. .....................................................................................72

COUNT 47   Implied Warranty of Fitness for a Particular Purpose, Stem Cell Training, Inc.....................................................................................73

COUNT 48   Strict Liability, Manufacturing Defect, Global Stem Cells Group, Inc. ... ....................................................................................................74

COUNT 49   Strict Liability, Manufacturing Defect, Stem Cell Training, Inc. ........75

COUNT 50   Strict Liability, Design Defect, Global Stem Cells Group, Inc. ..........76

COUNT 51   Strict Liability, Design Defect, Stem Cell Training, Inc.....................77

COUNT 52   Strict Liability, Failure To Warn, Global Stem Cells Group, Inc.........78

COUNT 53   Strict Liability, Failure To Warn, Stem Cell Training, Inc.................80

COUNT 54   Negligence, Product Liability, Global Stem Cells Group, Inc.............82

COUNT 56   Negligence, Global Stem Cells Group, Inc. .......................................85

COUNT 57   Negligence, Stem Cell Training, Inc..................................................86

COUNT 58   Express Warranty, Pavillion Foods, Inc.............................................87

COUNT 59   Express Warranty, Pavillion Scientific, Inc.......................................88

COUNT 60   Implied Warranty of Merchantability, Pavillion Foods, Inc. ..............89

COUNT 61   Implied Warranty Of Merchantability, Pavillion Scientific, Inc..........90

COUNT 62   Implied Warranty Of Fitness for a Particular Purpose, Pavillion Foods, Inc. ...............................................................................................91

COUNT 63   Implied Warranty Of Fitness for a Particular Purpose, Pavillion Scientific, Inc. ............................................................................................92

COUNT 64   Strict Liability, Manufacturing Defect, Pavillion Foods, Inc..............93

COUNT 65   Strict Liability, Manufacturing Defect, Pavillion Scientific, Inc..........94

COUNT 66   Strict Liability, Design Defect, Pavillion Foods, Inc. ..........................95

COUNT 67   Strict Liability, Design Defect, Pavillion Scientific, Inc. ....................96

COUNT 68   Strict Liability, Failure To Warn, Pavillion Foods, Inc.......................97

COUNT 69   Strict Liability, Failure To Warn, Pavillion Scientific, Inc.................99

COUNT 70   Negligence, Product Liability, Pavillion Foods, Inc...........................101

COUNT 71   Negligence, Product Liability, Pavillion Scientific, Inc.....................103

COUNT 72   Negligence, Pavillion Foods, Inc. ....................................................104

COUNT 73   Negligence, Pavillion Scientific, Inc. ...............................................105

COUNT 74    Vicarious Liability for Kristen C. Comella's Acts, Pavillion Foods, Inc. .. ...................................................................................................106

COUNT 75    Vicarious Liability for Kristen C. Comella's Acts, Pavillion Scientific,
Inc.    ...................................................................................................106

Damages Claimed by Jeannine Mallard .............................................................107

Demand For Jury Trial ...............................................................................107

Certificate Of Service ...............................................................................108

## Introduction

The Plaintiff Jeannine Mallard files this Amended Complaint sues the Defendants U.S. Stem Cell, Inc, f/k/a Biohart, Inc., US Stem Cell Clinic LLC, Regenestem, LLC, Regenestem Network, LLC, Kristin C. Comella, Shareen M. Greenbaum, M.D. Hollywood Eye Institute, P.A., Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC, Stem Cell Training, Inc., Pavillion Foods, Inc., d/b/a Palm Supply, and Pavillion Scientific, Inc., and alleges as follows:

1.     This case arises out of negligent preoperative clearance of the Plaintiff by the Defendants and the subsequent provision of "stem cell" therapy to Plaintiff, and for the related medical malpractice.  As alleged in detail below, Defendants negligently allowed the Plaintiff participate in and be subjected to a so-called clinical trial wherein a "stem cell" medical product was injected directly into Plaintiff's eyes, causing her to suffer permanent blindness.

## Jurisdictional Statement and Identification of the Parties

2.     This is an action for damages in excess of this Court's minimum jurisdictional limits, exclusive of interest and costs.

3.     Venue is proper in Broward County, Florida, where one or more of the Defendants reside and the events giving rise to this lawsuit occurred.

4.     Plaintiff Jeannine Mallard resides in France.

5.     Defendant U.S. Stem Cell, Inc. f/k/a Bioheart, Inc. is a Florida for-profit corporation with a principal place of business in Sunrise, Florida.

6.     Defendant US Stem Cell Clinic LLC is a Florida company with a principal place of business in Sunrise, Florida.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

7.     Defendant Regenestem, LLC is a Florida company with its principal place of business in Plantation, Florida.

8.     Defendant Regenestem Network, LLC is a Florida company with its principal place of business in Plantation, Florida.

9.     Defendant Kristin C. Comella is the director of U.S. Stem Cell, Inc. and manages, oversees, and engaged in the sale of stem therapies on behalf of the Defendants U.S. Stem Cell, Inc., US Stem Cell Clinic LLC, Regenestem, LLC, and Regenestem Network, LLC.  She lives in Weston, Florida.

10.    Defendant Shareen Greenbaum, M.D. is a medical doctor, specializing in ophthalmology.  She lives in Weston, Florida, and practices medicine in Hollywood and Sunrise, Florida.

11.    Defendant Hollywood Eye Institute, P.A. ("Hollywood Eye") is the Florida professional association through which Dr. Greenbaum operates her medical practice.

12.    Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC is an administratively dissolved Florida for-profit corporation with a principal place of business in Miami Lakes, Florida.

13.    Defendant Stem Cell Training, Inc. is an administratively dissolved Florida for-profit corporation with a principal place of business in Miami Lakes, Florida.

14.    Defendant Pavillion Foods, Inc., d/b/a Palm Supply ("Palm Supply") is a Florida corporation with a principle place of business in Holiday, Florida.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

15.    Defendant Pavillion Scientific, Inc. ("Pavillion Scientific") is an administratively dissolved Florida for-profit corporation with a principle place of business in Tampa, Florida.

16.    Defendants U.S. Stem Cell, Inc., US Stem Cell Clinic LLC, Regenestem, LLC, Regenestem Network, LLC, Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC, Stem Cell Training, Inc., Pavillion Foods, Inc., d/b/a Palm Supply, and Pavillion Scientific, Inc. together owned and operated a stem cell therapy business in Sunrise, Florida, described in further detail below.

### Compliance with Conditions Precedent & FLA. STAT. § 766.106(2)

17.    Notice of Intention to Initiate Litigation against certain of the Defendants named in this Complaint was given and acknowledged in accordance with the requirements of Fla. Stat. § 766.106(2).  The Plaintiff has complied with all of the requirements of the Department of Health, Agency for Health Care Administration.  A copy of this Second Amended Complaint will be sent to that entity at the time it is filed.  This action is properly brought within the statute of limitations.  Any and all conditions precedent to the filing of this lawsuit have been complied with.

### Certificate of Counsel

18.    Through counsel's signature below, it is hereby certified, pursuant to Florida Statute section 766.203, that counsel for the Plaintiff, before filing this action, made a reasonable investigation as permitted by the circumstances to determine that there are grounds for a good faith belief that there was

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

negligence in the care and treatment of the Plaintiff, Jeannine Mallard.  Such reasonable investigation has given rise to a good faith belief that grounds exist for an action against the named Defendants.

### Facts Giving Rise to the Actions

### A. The U.S. Stem Cell Defendants Promise to Provide Effective Stem Cell Therapy.

19.    The Defendants U.S. Stem Cell, Inc., US Stem Cell Clinic LLC, Regenestem, LLC, Regenestem Network, LLC, Kristin Comella, Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC, Stem Cell Training Center, Inc., Pavillion Foods, Inc., d/b/a Palm Supply, and Pavillion Scientific, Inc. jointly operated at all relevant times a "stem cell" therapy business, formerly known as "Bioheart," which they advertised as providing research and clinical trials (the "U.S. Stem Cell Defendants").

20.    The U.S. Stem Cell Defendants administered their stem cell services and operated their business out of a clinic called "U.S. Stem Cell Clinic," located at the Sawgrass Mall in Sunrise, Florida (the "Clinic").

21.    Defendant Kristin C. Comella, an aerobics instructor at the YMCA in Weston, Florida, serves as U.S. Stem Cell Clinic's chief scientific officer at the Clinic.  Ms. Comella is not a physician, and, at all times relevant to this lawsuit, she did not have any degree in medicine or cell biology.  Nonetheless, Ms. Comella touted herself as an expert in adipose stem cell research and actively participated in stem cell procedures at the Clinic.

22.    The U.S. Stem Cell Defendants claim to harvest stem cells by using

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1688

liposuction to collect adipose tissue from patients and by processing that tissue to isolate stem cells. Defendants, through their agents, officers and employees, including Comella, purport to inject or arrange for stem cells to be injected via needle into various parts of patients' bodies.

23. The U.S. Stem Cell Defendants claim that this stem cell therapy offered at the Clinic is cutting edge therapy and can be used to treat a myriad of ailments and diseases, including macular degeneration.

24. Despite these representations of fact, no scientific evidence or peer-reviewed literature shows that the U.S. Stem Cell Defendants' stem cell therapies provide any medical benefit for macular degeneration.

**B. The U.S. Stem Cell Defendants Design, Formulate and Produce Stem Cell Therapy.**

25. The U.S. Stem Cell Defendants were in privity with Ms. Mallard.

26. The U.S. Stem Cell Defendants developed, designed, tested, manufactured, inspected, distributed, marketed, promoted, sold, supplied, used, and otherwise released into the stream of commerce the product at issue in this case.

27. Among other things, the U.S. Stem Cell Defendants developed, and used a medical kit known as a stem cell extraction and stromal vascular fraction ("SVF") processing kit.

28. The kit consists of a collection of devices, chemicals, substances, tools, and components, including but not limited to syringes, cell wash bags, conical tubes, an incubator, a centrifuge, and one or more chemical solutions. These devices, tools and chemical solutions are used in a series of processing

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

steps. The adipose (i.e. fat) tissue is extracted from the patient's body by way of a liposuction, the extracted tissue is broken down into different component parts and mixed with one or more chemical substances, and the resulting processed substance is injected into the patient's body. This manufacturing process includes an incubation period, several washing steps, centrifugation, and filtration. As such, the processed substance injected into a patient's body does not consist solely of the patient's own tissue. At the time of injection, the patient's tissue has been broken down, processed, and mixed with chemical solutions, resulting in a significant alteration of the tissue's original relevant characteristics.

29.    The U.S. Stem Cell Defendants claim and allege to the general public and their patients, without sufficient evidence or proof, that their kit enables them to isolate a collection of cells from the remainder of the adipose tissue (known as the SVF), that stem cells are contained within SVF, and that those stem cells possess regenerative qualities that take effect upon injection of the extracted and processed SVF into the target portion of the patient's body.

30.    The U.S. Stem Cell Defendants, however, failed to disclose to the general public and their patients, including Ms. Mallard, certain facts regarding the kits and the risks associated with the use of such kits in stem cell treatment procedures.

31.    The kits were equipped with one or more chemical substances that are mixed with patients' extracted tissue and form part of the mixture ultimately injected into patients' bodies. These substances were labeled and

11

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

intended to be used for laboratory or research use only, were never intended for use in a surgical setting on a human patient, and were used without sufficient evidence that it was safe for injection into human patients. The U.S. Stem Cell Defendants failed to disclose this to general public or their patients, including Ms. Mallard.

32.   The U.S. Stem Cell Defendants manufactured the kits partly or entirely at the business premises of Defendant Palm Supply. Defendant Palm Supply is a company owned and operated by members of Defendant Comella's immediate family and in the business of supplying janitorial and cleaning supplies such as paper, floor care products, carpet care products, bags and can liners, waste receptacles, mops, brooms, and brushes. The business premises of Defendant Palm Supply lacked the necessary controls, policies, procedures, and protocols to ensure the quality, efficacy, sterility and integrity of the kits and their component devices, chemicals, solutions, substances, and tools. The U.S. Stem Cell Defendants failed to disclose this fact as well to general public and their patients, including Ms. Mallard.

33.   The federal Food and Drug Administration ("FDA") is the federal agency responsible for protecting the public health by ensuring the safety, efficacy, and security of human drugs, biological products, and medical devices. The FDA never approved the use of the U.S. Stem Cell Defendants' kits or the kits' component parts for use on human patients. The U.S. Stem Cell Defendants failed to disclose this fact as well to general public and their patients, including Ms. Mallard.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

34.   The U.S. Stem Cell Defendants claim they processed adipose tissue to isolate stem cells.

35.   The U.S. Stem Cell Defendants intended its product be delivered via needle injection either directly or behind Ms. Mallard's eyes.

36.   The U.S. Stem Cell Defendants claimed the product, when used through injection into or behind the eyes, would stop the progression of macular degeneration, and created, designed, manufactured, distributed, sold, and supplied the product for that purpose.

37.   The product breached the U.S. Stem Cell Defendants' express warranties, breached the Defendants' implied warranties of merchantability and fitness for a particular purpose, was defective in design, manufacture, and in its failure to warn Ms. Mallard, and was manufactured, designed, and marketed in a negligent manner by the Defendants.

C. **Defendant Dr. Greenbaum Agrees to Lead a Clinical Trial, Without Any Experience or Formal Training.**

38.   Defendant Dr. Greenbaum first became aware of U.S. Stem Cell, Inc. through Ms. Comella. Dr. Greenbaum routinely exercised at the local YMCA, where she met Ms. Comella and the two developed a close friendship.

39.   Because of their friendship, Ms. Comella asked Dr. Greenbaum if she would be interested in being the principal investigator in a clinical trial of a treatment for Age Related Macular Degeneration ("AMD"), a progressive condition for which there is no known medical treatment.

40.   Dr. Greenbaum had little or no experience in conducting medical

research or clinical trials and had no experience with stem cells. Ms. Comella knew this, but advised that experience was not necessary. Dr. Greenbaum initially refused the offer, but later agreed to participate in the AMD clinical trial.

41.     In preparation to oversee the AMD clinical trial, in October 2013, Dr. Greenbaum took a course taught by Ms. Comella on how to harvest and use adipose derived stem cells. Ms. Comella agreed to defer the normal $7,500 cost of the course in exchange for Dr. Greenbaum's work on the AMD clinical trial.

42.     By December 2013, U.S. Stem Cell, Inc. was representing that Dr. Greenbaum was the principal investigator for the AMD clinical trial.

43.     Dr. Greenbaum believed that the U.S. Stem Cell, Inc. clinical trial on AMD would be legitimate – that information would be gathered and shared, there would be follow up exams of the patients, and with the goal of identifying a quality treatment to help patients afflicted with AMD.

44.     The AMD clinical trial was listed as an ongoing clinical trial on the United States National Institute of Health's clinical trial website, which is the central repository for ongoing clinical trials throughout the world.

**D. Defendant Dr. Greenbaum Begins Performing Stem Cell Therapy Surgeries and Realizes the Clinical Trial to be a Scam.**

45.     Over the next year, Dr. Greenbaum participated in approximately 6 separate stem cell treatments on different patients.

46.     U.S. Stem Cell, Inc. charged the clinical trial participants

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668

thousands of dollars to receive the treatment and paid Dr. Greenbaum fees to perform her functions.

47.    On each of the patients, Dr. Greenbaum conducted a pre-procedure exam in her office to determine whether the patient had the appropriate AMD diagnosis.  If the patient was an eligible candidate and met inclusion criteria, Dr. Greenbaum would then perform the "stem cell" treatment, which entailed a mini liposuction procedure to extract the patient's adipose tissue or fat and then another procedure to inject adipose derived stem cells directly into the globe of the patient's eye.

48.    Over the course of the year, Dr. Greenbaum witnessed the inappropriate manner in which U.S. Stem Cell, Inc. was conducting the AMD trial.  Throughout the year 2014, Dr. Greenbaum dealt and interacted with employees and representatives of the U.S. Stem Cell Defendants. During the course of those dealings and interactions, Dr. Greenbaum witnessed employees and representatives of the U.S. Stem Cell Defendants lie or make misrepresentations to patients about the trial.  Additionally, Dr. Greenbaum knew that no follow up on the patients was performed to determine whether the treatment was effective or even harmful.  And, she also determined that there was no gathering or sharing of information regarding the treatment.  In short, the U.S. Stem Cell Defendants were operating a business for profit, under the guise of a clinical research trial.

49.    Notwithstanding the failures regarding the AMD clinical trial, Dr. Greenbaum did nothing until the spring of 2015, when she finally advised her

15

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668

good friend, Ms. Comella, that she would no longer participate.

50.     Ms. Comella became extremely upset and ultimately convinced Dr. Greenbaum to at least perform the pre procedure exams for the already scheduled procedures.  Dr. Greenbaum agreed to continue working for U.S. Stem Cell, Inc. on these terms, notwithstanding that she knew the aforementioned information and the AMD clinical trial to be a scam.

### E. Defendants Convince Ms. Mallard to Participate in the Clinical Trial.

51.     Age-related macular degeneration ("AMD") is a common eye condition causing vision loss over time.  It is caused by the deterioration of the central portion of the retina, known as the macula, which is responsible for focusing central vision in the eye and controlling the ability to see objects in fine detail.

52.     Defendants listed their stem cell therapy as a "clinical trial" for AMD on the U.S. Health and clinical trials website, effectively advertising to people with the disorder looking for an effective treatment.

53.     Ms. Mallard had been diagnosed with "dry" AMD, the most common form and had experienced some progression of the disorder.  But, as of the fall of 2014, Ms. Mallard could see well enough to live independently, travel and enjoy her daily life without assistance.

54.     Plaintiff Ms. Mallard discovered U.S. Stem Cell, Inc.'s AMD clinical trial one day while browsing the U.S. Health clinical trials website.

55.     Ms. Mallard phoned U.S. Stem Cell and spoke directly with Ms. Comella and/or other representatives of the U.S. Stem Cell Defendants and

then with Dr. Greenbaum, who Ms. Comella introduced to Ms. Mallard as having experience with the procedure.

56.     Based on Ms. Mallard's conversations with Defendants and their representatives, Ms. Mallard agreed to pay Defendants a total of $7000 ($5,000, for stem cell therapy treatment for both of her eyes plus $2000 for the storage of the harvested stem cells). She then made arrangements to travel to Florida to undergo the procedure.

57.     On February 8, 2015, Ms. Mallard traveled alone to the United States to have the stem cell procedure.

58.     On February 10, 2015, Ms. Mallard first saw Defendant Dr. Greenbaum, who conducted a pre-procedure exam of Ms. Mallard, and told her she was eligible to have the procedure performed on both eyes, clearing her to participate in the AMD "clinical trial."

59.     Defendant Dr. Greenbaum assured Ms. Mallard that she was a candidate for the procedure and that it was safe for her to proceed.

60.     At no point did Dr. Greenbaum warn Ms. Mallard that the AMD clinical trial was not operating as represented or of her concerns about the trial which later caused her to stop acting as the chief investigator. In short, Dr. Greenbaum did nothing to communicate her concerns about the clinical trial, nor did she do anything to dissuade Ms. Mallard from going forward with this procedure.

61.     Pursuant to Dr. Greenbaum's orders, the following day, on February 11, 2015, Ms. Mallard arrived at Dr. Greenbaum's office where, Dr.

Greenbaum, assisted by Ms. Comella performed the "stem cell" treatment, which entailed a mini liposuction procedure to extract adipose tissue or fat from Ms. Mallard's abdomen, and then another procedure to inject adipose derived "stem cells" directly into Ms. Mallard's eyes.

62.    Despite having no medical training, Ms. Comella was present for and participated in the liposuction operation performed on Ms. Mallard.

63.    Once the adipose tissue or fat was removed from Ms. Mallard, Defendant Comella performed or oversaw the "stem cell" extraction and isolation process. She then returned to the operating room to show Ms. Mallard the vials of "stem cells." Next, Dr. Greenbaum injected the "stem cells" directly into Ms. Mallard's eyes – she injected her right eye intravitreally and her left eye behind the eye (retrobulbar).

64.    Thus, Dr. Greenbaum and Ms. Comella both had direct patient contact and communication during the "clinical trial" procedures.

65.    Ms. Mallard was released after these procedures and she returned to the hotel where she was staying.

66.    The following day, Ms. Mallard was in significant pain and called Defendants for help. Dr. Greenbaum advised Ms. Mallard that the pain was normal and caused by inflammation.

67.    By the following day, February 13, however, Ms. Mallard's condition had not improved and the pain persisted. She went to see Dr. Greenbaum, who again told her that her pain was due to inflammation and gave her anti-inflammatory medication.

68.     With Defendants permission, Ms. Mallard returned to France, but she continued to experience pain in her eyes over the next two weeks.  Her condition progressed and worsened and by March 2015, she was diagnosed with retinal detachment in her right eye.  By June 2015, Ms. Mallard was permanently blind in that eye.

69.     Ms. Mallard has undergone several surgeries to attempt to correct her vision and repair her right eye, but these efforts have been unsuccessful.

70.     Ms. Mallard's vision in her left eye has worsened drastically.

71.     As a direct and proximate cause of the Defendants' negligence, Ms. Mallard suffered permanent vision loss and the damages set forth below.

### COUNT 1     Express Warranty, U.S. Stem Cell, Inc.

72.     The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

73.     The product developed, designed, tested, manufactured, inspected, distributed, marketed, promoted, sold, supplied, and otherwise released into the stream of commerce by Defendant U.S. Stem Cell, Inc. was defective because it did not conform to representations of fact made by Defendant U.S. Stem Cell, Inc., orally and in writing, through its employees and agents, in connection with the transaction on which Plaintiff Mallard relied in the use of the product.

74.     Defendant U.S. Stem Cell, Inc. represented the fact that the product was capable of treating and stopping the progression of macular degeneration.

75.   Despite this representation of fact, no scientific evidence shows that the product provides any benefit for macular degeneration.

76.   No peer-reviewed literature shows the product provides any benefit for macular degeneration.

77.   The prevailing opinion in the scientific community is that the product cannot provide a benefit for macular degeneration.

78.   Creating, designing, manufacturing, distributing, selling, and supplying a product with such an express promise to stop the progression of macular degeneration requires safeguards not taken by Defendant U.S. Stem Cell, Inc., and expertise not possessed by Defendant U.S. Stem Cell, Inc.

79.   Defendant U.S. Stem Cell, Inc. knew the product was not capable of treating or stopping the progression of macular degeneration at this stage in product development, but promoted the treatment as such without any evidence to support such promotion.

80.   The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

81.   As a direct and proximate cause of the breach of express warranty alleged, Plaintiff Mallard sustained serious permanent damages as alleged in detail below.

### COUNT 2      Express Warranty, US Stem Cell Clinic LLC

82.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

83.   The product developed, designed, tested, manufactured, inspected,

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

distributed, marketed, promoted, sold, supplied, and otherwise released into the stream of commerce by Defendant US Stem Cell Clinic LLC was defective because it did not conform to representations of fact made by Defendant US Stem Cell Clinic LLC, orally and in writing, through its employees and agents, in connection with the transaction on which Plaintiff Mallard relied in the use of the product.

84.    Defendant US Stem Cell Clinic LLC represented the fact that the product was capable of treating and stopping the progression of macular degeneration.

85.    Despite this representation of fact, no scientific evidence shows that the product provides any benefit for macular degeneration.

86.    No peer-reviewed literature shows the product provides any benefit for macular degeneration.

87.    The prevailing opinion in the scientific community is that the product cannot provide a benefit for macular degeneration.

88.    Creating, designing, manufacturing, distributing, selling, and supplying a product with such an express promise to stop the progression of macular degeneration requires safeguards not taken by Defendant US Stem Cell Clinic LLC, and expertise not possessed by Defendant US Stem Cell Clinic LLC.

89.    Defendant US Stem Cell Clinic LLC knew the product was not capable of treating or stopping the progression of macular degeneration at this stage in product development, but promoted the treatment as such without any

evidence to support such promotion.

90.    The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

91.    As a direct and proximate cause of the breach of express warranty alleged, Plaintiff Mallard sustained serious permanent damages as alleged in detail below.

<u>**COUNT 3**     **Express Warranty, Regenestem, LLC**</u>

92.    The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

93.    The product developed, designed, tested, manufactured, inspected, distributed, marketed, promoted, sold, supplied, and otherwise released into the stream of commerce by Defendant Regenestem, LLC was defective because it did not conform to representations of fact made by Defendant Regenestem, LLC, orally and in writing, through its employees and agents, in connection with the transaction on which Plaintiff Mallard relied in the use of the product.

94.    Defendant Regenestem, LLC represented the fact that the product was capable of treating and stopping the progression of macular degeneration.

95.    Despite this representation of fact, no scientific evidence shows that the product provides any benefit for macular degeneration.

96.    No peer-reviewed literature shows the product provides any benefit for macular degeneration.

97.    The prevailing opinion in the scientific community is that the product cannot provide a benefit for macular degeneration.

98.   Creating, designing, manufacturing, distributing, selling, and supplying a product with such an express promise to stop the progression of macular degeneration requires safeguards not taken by Defendant Regenestem LLC, and expertise not possessed by Defendant Regenestem, LLC.

99.   Defendant Regenestem, LLC knew the product was not capable of treating or stopping the progression of macular degeneration at this stage in product development, but promoted the treatment as such without any evidence to support such promotion.

100.   The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

101.   As a direct and proximate cause of the breach of express warranty alleged, Plaintiff Mallard sustained serious permanent damages as alleged in detail below.

**COUNT 4     Express Warranty, Regenestem Network, LLC**

102.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

103.   The product developed, designed, tested, manufactured, inspected, distributed, marketed, promoted, sold, supplied, and otherwise released into the stream of commerce by Defendant Regenestem Network, LLC was defective because it did not conform to representations of fact made by Defendant Regenestem Network, LLC, orally and in writing, through its employees and agents, in connection with the transaction on which Plaintiff Mallard relied in the use of the product.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

104.   Defendant Regenestem Network, LLC represented the fact that the product was capable of treating and stopping the progression of macular degeneration.

105.   Despite this representation of fact, no scientific evidence shows that the product provides any benefit for macular degeneration.

106.   No peer-reviewed literature shows the product provides any benefit for macular degeneration.

107.   The prevailing opinion in the scientific community is that the product cannot provide a benefit for macular degeneration.

108.   Creating, designing, manufacturing, distributing, selling, and supplying a product with such an express promise to stop the progression of macular degeneration requires safeguards not taken by Defendant Regenestem Network, LLC, and expertise not possessed by Defendant Regenestem, Network, LLC.

109.   Defendant Regenestem Network, LLC knew the product was not capable of treating or stopping the progression of macular degeneration at this stage in product development, but promoted the treatment as such without any evidence to support such promotion.

110.   The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

111.   As a direct and proximate cause of the breach of express warranty alleged, Plaintiff Mallard sustained serious permanent damages as alleged in detail below.

24

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1688

**COUNT 5     Express Warranty, Kristin C. Comella**

112. The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

113. The product developed, designed, tested, manufactured, inspected, distributed, marketed, promoted, sold, supplied, and otherwise released into the stream of commerce by Defendant Kristin C. Comella was defective because it did not conform to representations of fact made by Defendant Kristin C. Comella, orally and in writing, through its employees and agents, in connection with the transaction on which Plaintiff Mallard relied in the use of the product.

114. Defendant Kristin C. Comella, represented the fact that the product was capable of treating and stopping the progression of macular degeneration.

115. Despite this representation of fact, no scientific evidence shows that the product provides any benefit for macular degeneration.

116. No peer-reviewed literature shows the product provides any benefit for macular degeneration.

117. The prevailing opinion in the scientific community is that the product cannot provide a benefit for macular degeneration.

118. Creating, designing, manufacturing, distributing, selling, and supplying a product with such an express promise to stop the progression of macular degeneration requires safeguards not taken by Defendant Kristin C. Comella, and expertise not possessed by Defendant Kristin C. Comella.

119. Defendant Kristin C. Comella knew the product was not capable of

26

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

treating or stopping the progression of macular degeneration at this stage in product development, but promoted the treatment as such without any evidence to support such promotion.

120. The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

121. As a direct and proximate cause of the breach of express warranty alleged, Plaintiff Mallard sustained serious permanent damages as alleged in detail below.

**COUNT 6      Implied Warranty of Merchantability, U.S. Stem Cell, Inc.**

122. The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

123. The product was defective because it was not reasonably fit for both the uses intended and the uses reasonably foreseeable by Defendant U.S. Stem Cell, Inc.

124. The product is not fit for use as a product for any purpose.

125. The product is not fit for the use intended by the Defendant U.S. Stem Cell, Inc., namely to give a therapeutic benefit and stop the progression of macular degeneration.

126. The product was defective for its intended and reasonably foreseeable uses.

127. Privity of contract exists between Plaintiff Mallard and Defendant U.S. Stem Cell, Inc.

128. Plaintiff Mallard justifiably relied on the Defendant U.S. Stem Cell,

Inc.'s representations about the product when agreeing to use the product to stop the progression of her macular degeneration.

129.   The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

**COUNT 7      Implied Warranty of Merchantability, US Stem Cell Clinic LLC**

130.   As a direct and proximate cause of the breach of implied warranty of merchantability alleged, Plaintiff Mallard sustained serious permanent damages as alleged in detail below.

131.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

132.   The product was defective because it was not reasonably fit for both the uses intended and the uses reasonably foreseeable by Defendant US Stem Cell Clinic LLC, Inc.

133.   The product is not fit for use as a product for any purpose.

134.   The product is not fit for the use intended by the Defendant US Stem Cell Clinic LLC, namely to give a therapeutic benefit and stop the progression of macular degeneration.

135.   The product was defective for its intended and reasonably foreseeable uses.

136.   Privity of contract exists between Plaintiff Mallard and Defendant US Stem Cell Clinic LLC.

137.   Plaintiff Mallard justifiably relied on the Defendant US Stem Cell Clinic LLC's representations about the product when agreeing to use the

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1688

product to stop the progression of her macular degeneration.

138.   The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

139.   As a direct and proximate cause of the breach of implied warranty of merchantability alleged, Plaintiff Mallard sustained serious permanent damages as alleged in detail below.

**COUNT 8      Implied Warranty of Merchantability, Regenestem, LLC**

140.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

141.   The product was defective because it was not reasonably fit for both the uses intended and the uses reasonably foreseeable by Defendant Regenestem, LLC.

142.   The product is not fit for use as a product for any purpose.

143.   The product is not fit for the use intended by the Defendant Regenestem, LLC, namely to give a therapeutic benefit and stop the progression of macular degeneration.

144.   The product was defective for its intended and reasonably foreseeable uses.

145.   Privity of contract exists between Plaintiff Mallard and Defendant Regenestem, LLC.

146.   Plaintiff Mallard justifiably relied on the Defendant Regenestem, LLC's representations about the product when agreeing to use the product to stop the progression of her macular degeneration.

147.   The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

148.   As a direct and proximate cause of the breach of implied warranty of merchantability alleged, Plaintiff Mallard sustained serious permanent damages as alleged in detail below.

## COUNT 9    Implied Warranty of Merchantability, Regenestem Network, LLC

149.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

150.   The product was defective because it was not reasonably fit for both the uses intended and the uses reasonably foreseeable by Defendant Regenestem Network, LLC, Inc.

151.   The product is not fit for use as a product for any purpose.

152.   The product is not fit for the use intended by the Defendant Regenestem Network, LLC, Inc., namely to give a therapeutic benefit and stop the progression of macular degeneration.

153.   The product was defective for its intended and reasonably foreseeable uses.

154.   Privity of contract exists between Plaintiff Mallard and Defendant U.S. Stem Cell, Inc.

155.   Plaintiff Mallard justifiably relied on the Defendant Regenestem Network, LLC's representations about the product when agreeing to use the product to stop the progression of her macular degeneration.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1688

156.   The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

157.   As a direct and proximate cause of the breach of implied warranty of merchantability alleged, Plaintiff Mallard sustained serious permanent damages as alleged in detail below.

**COUNT 10    Implied Warranty of Merchantability, Kristin C. Comella**

158.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

159.   The product was defective because it was not reasonably fit for both the uses intended and the uses reasonably foreseeable by Defendant Kristin C. Comella.

160.   The product is not fit for use as a product for any purpose.

161.   The product is not fit for the use intended by the Defendant Kristin C. Comella, namely to give a therapeutic benefit and stop the progression of macular degeneration.

162.   The product was defective for its intended and reasonably foreseeable uses.

163.   Privity of contract exists between Plaintiff Mallard and Defendant Kristin C. Comella.

164.   Plaintiff Mallard justifiably relied on the Defendant Kristin C. Comella's representations about the product when agreeing to use the product to stop the progression of her macular degeneration.

165.   The Defendant received notice of the breach of warranty when it

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

discovered the condition of Plaintiff Mallard's eyes after receiving the product.

166.   As a direct and proximate cause of the breach of implied warranty of merchantability alleged, Plaintiff Mallard sustained serious permanent damages as alleged in detail below.

**COUNT 11    Implied Warranty of Fitness for a Particular Purpose, U.S. Stem Cell, Inc.**

167.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

168.   The product was defective because it was not reasonably fit for the specific purpose for which Defendant U.S. Stem Cell, Inc. knowingly sold the product and for which, in reliance on the judgment of Defendant U.S. Stem Cell, Inc. the Plaintiff Jeannine Mallard bought the product.

169.   The Defendant knowingly manufactured and sold the product for the specific purpose of treating and stopping the progression macular degeneration.

170.   Privity of contract exists between Plaintiff Jeannine Mallard and Defendant U.S. Stem Cell, Inc.

171.   The product did not treat or stop the progression of macular degeneration, nor was it approved for any such use.

172.   The Defendant received notice of the breach of warranty when it discovered the condition of Jeannine Mallard's eyes after receiving the product.

173.   As a direct and proximate cause of the breach of implied warranty of fitness for a particular purpose alleged, Jeannine Mallard sustained serious

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

permanent damages as alleged in detail below.

**COUNT 12      Implied Warranty of Fitness for a Particular Purpose, US Stem**

**Cell Clinic LLC**

174.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

175.   The product was defective because it was not reasonably fit for the specific purpose for which Defendant US Stem Cell Clinic LLC knowingly sold the product and for which, in reliance on the judgment of Defendant US Stem Cell Clinic LLC the Plaintiff Jeannine Mallard bought the product.

176.   The Defendant knowingly manufactured and sold the product for the specific purpose of treating and stopping the progression macular degeneration.

177.   Privity of contract exists between Plaintiff Jeannine Mallard and Defendant US Stem Cell Clinic LLC.

178.   The product did not treat or stop the progression of macular degeneration, nor was it approved for any such use.

179.   The Defendant received notice of the breach of warranty when it discovered the condition of Jeannine Mallard's eyes after receiving the product.

180.   As a direct and proximate cause of the breach of implied warranty of fitness for a particular purpose alleged, Jeannine Mallard sustained serious permanent damages as alleged in detail below.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668

**COUNT 13**     Implied Warranty of Fitness for a Particular Purpose,

Regenestem, LLC

181.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

182.   The product was defective because it was not reasonably fit for the specific purpose for which Defendant Regenestem, LLC. knowingly sold the product and for which, in reliance on the judgment of Defendant Regenestem, LLC the Plaintiff Jeannine Mallard bought the product.

183.   The Defendant knowingly manufactured and sold the product for the specific purpose of treating and stopping the progression macular degeneration.

184.   Privity of contract exists between Plaintiff Jeannine Mallard and Defendant Regenestem, LLC.

185.   The product did not treat or stop the progression of macular degeneration, nor was it approved for any such use.

186.   The Defendant received notice of the breach of warranty when it discovered the condition of Jeannine Mallard's eyes after receiving the product.

187.   As a direct and proximate cause of the breach of implied warranty of fitness for a particular purpose alleged, Jeannine Mallard sustained serious permanent damages as alleged in detail below.

**COUNT 14**     Implied Warranty of Fitness for a Particular Purpose,

Regenestem Network, LLC

188.   The Plaintiff adopts and realleges paragraphs 1 through 71 and

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668

further alleges:

189.  The product was defective because it was not reasonably fit for the specific purpose for which Defendant Regenestem Network, LLC knowingly sold the product and for which, in reliance on the judgment of Defendant Regenestem Network, LLC the Plaintiff Jeannine Mallard bought the product.

190.  The Defendant knowingly manufactured and sold the product for the specific purpose of treating and stopping the progression macular degeneration.

191.  Privity of contract exists between Plaintiff Jeannine Mallard and Defendant Regenestem Network, LLC.

192.  The product did not treat or stop the progression of macular degeneration, nor was it approved for any such use.

193.  The Defendant received notice of the breach of warranty when it discovered the condition of Jeannine Mallard's eyes after receiving the product.

194.  As a direct and proximate cause of the breach of implied warranty of fitness for a particular purpose alleged, Jeannine Mallard sustained serious permanent damages as alleged in detail below.

**COUNT 15**      **Implied Warranty of Fitness for a Particular Purpose, Kristin C. Comella**

195.  The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

196.  The product was defective because it was not reasonably fit for the specific purpose for which Defendant Kristin C. Comella knowingly sold the

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668

product and for which, in reliance on the judgment of Defendant Kristin C. Comella the Plaintiff Jeannine Mallard bought the product.

197.   The Defendant knowingly manufactured and sold the product for the specific purpose of treating and stopping the progression macular degeneration.

198.   Privity of contract exists between Plaintiff Jeannine Mallard and Defendant Kristin C. Comella.

199.   The product did not treat or stop the progression of macular degeneration, nor was it approved for any such use.

200.   The Defendant received notice of the breach of warranty when it discovered the condition of Jeannine Mallard's eyes after receiving the product.

201.   As a direct and proximate cause of the breach of implied warranty of fitness for a particular purpose alleged, Jeannine Mallard sustained serious permanent damages as alleged in detail below.

**COUNT 16   Strict Liability, Manufacturing Defect, U.S. Stem Cell, Inc.**

202.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

203.   Defendant U.S. Stem Cell, Inc. researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to create a product that was not defective.

204.   The product created, designed, manufactured, distributed, sold,

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

and/or supplied by Defendant U.S. Stem Cell, Inc. was defective because of a manufacturing defect.

205. The product reached Jeannine Mallard in a condition unreasonably dangerous to Jeannine Mallard.

206. The product reached Jeannine Mallard without substantial change affecting its condition.

207. The product was unreasonably dangerous because of a manufacturing defect because it was different from its intended design and failed to perform as safely as the intended design would have performed, since the intended design required extreme technical competence in manufacturing stem cells suited for the purpose of injection to treat or stop the acceleration of macular degeneration, and such technical skill was not used for the product at issue.

208. The Defendant's defective product directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

**COUNT 17      Strict Liability, Manufacturing Defect, US Stem Cell Clinic LLC**

209. The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

210. Defendant US Stem Cell Clinic LLC researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to create a product that was not defective.

211. The product created, designed, manufactured, distributed, sold, and/or supplied by Defendant US Stem Cell Clinic LLC was defective because of a manufacturing defect.

212. The product reached Jeannine Mallard in a condition unreasonably dangerous to Jeannine Mallard.

213. The product reached Jeannine Mallard without substantial change affecting its condition.

214. The product was unreasonably dangerous because of a manufacturing defect because it was different from its intended design and failed to perform as safely as the intended design would have performed, since the intended design required extreme technical competence in manufacturing stem cells suited for the purpose of injection to treat or stop the acceleration of macular degeneration, and such technical skill was not used for the product at issue.

215. The Defendant's defective product directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

**COUNT 18      Strict Liability, Manufacturing Defect, Regenestem, LLC**

216. The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

217. Defendant Regenestem, LLC researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore

had a duty to create a product that was not defective.

218.   The product created, designed, manufactured, distributed, sold, and/or supplied by Defendant Regenestem, LLC was defective because of a manufacturing defect.

219.   The product reached Jeannine Mallard in a condition unreasonably dangerous to Jeannine Mallard.

220.   The product reached Jeannine Mallard without substantial change affecting its condition.

221.   The product was unreasonably dangerous because of a manufacturing defect because it was different from its intended design and failed to perform as safely as the intended design would have performed, since the intended design required extreme technical competence in manufacturing stem cells suited for the purpose of injection to treat or stop the acceleration of macular degeneration, and such technical skill was not used for the product at issue.

222.   The Defendant's defective product directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

**COUNT 19      Strict Liability, Manufacturing Defect, Regenestem Network, LLC**

223.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

224.   Defendant Regenestem Network, LLC researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed,

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to create a product that was not defective.

225. The product created, designed, manufactured, distributed, sold, and/or supplied by Defendant Regenestem Network, LLC was defective because of a manufacturing defect.

226. The product reached Jeannine Mallard in a condition unreasonably dangerous to Jeannine Mallard.

227. The product reached Jeannine Mallard without substantial change affecting its condition.

228. The product was unreasonably dangerous because of a manufacturing defect because it was different from its intended design and failed to perform as safely as the intended design would have performed, since the intended design required extreme technical competence in manufacturing stem cells suited for the purpose of injection to treat or stop the acceleration of macular degeneration, and such technical skill was not used for the product at issue.

229. The Defendant's defective product directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

**COUNT 20    Strict Liability, Manufacturing Defect, Kristin C. Comella**

230. The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

231. Defendant Kristin C. Comella researched, developed, designed,

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to create a product that was not defective.

232.    The product created, designed, manufactured, distributed, sold, and/or supplied by Defendant Kristin C. Comella was defective because of a manufacturing defect.

233.    The product reached Jeannine Mallard in a condition unreasonably dangerous to Jeannine Mallard.

234.    The product reached Jeannine Mallard without substantial change affecting its condition.

235.    The product was unreasonably dangerous because of a manufacturing defect because it was different from its intended design and failed to perform as safely as the intended design would have performed, since the intended design required extreme technical competence in manufacturing stem cells suited for the purpose of injection to treat or stop the acceleration of macular degeneration, and such technical skill was not used for the product at issue.

236.    The Defendant's defective product directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

**COUNT 21**     **Strict Liability, Design Defect, U.S. Stem Cell, Inc.**

237.    The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668

238.   Defendant U.S. Stem Cell, Inc. researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to create a product that was not defective.

239.   The product is defective because it was in a condition unreasonably dangerous to Jeannine Mallard when created, designed, manufactured, distributed, sold, and/or supplied by Defendant U.S. Stem Cell, Inc.

240.   The product reached Jeannine Mallard without substantial change affecting that condition after creation, design, manufacture, distribution, sale, and/or supply by Defendant U.S. Stem Cell, Inc.

241.   The product had a design defect because it failed to perform as safely as an ordinary consumer would expect when used as intended, causing permanent damage to Jeannine Mallard.

242.   The product's risk of danger in the design outweighs the non-existent benefits of a therapy with no evidence of therapeutic value to a reasonable degree of scientific certainty.

243.   Defendant US Stem Cell Clinic LLC, through its defective product, directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

**COUNT 22      Strict Liability, Design Defect, US Stem Cell Clinic LLC**

244.   The Plaintiff adopts and realleges paragraphs 1 through 71 and

further alleges:

245.  Defendant  US  Stem  Cell  Clinic  LLC  researched,  developed, designed,  tested,  manufactured,  inspected,  labeled,  distributed,  marketed, promoted,  sold,  and/or  otherwise  released  into  the  stream  of  commerce  the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to create a product that was not defective.

246.  The  product  is  defective  because  it  was  in  a  condition unreasonably  dangerous  to  Jeannine  Mallard  when  created,  designed, manufactured, distributed, sold, and/or supplied by Defendant US Stem Cell Clinic LLC.

247.  The  product  reached  Jeannine  Mallard  without  substantial change  affecting  that  condition  after  creation,  design,  manufacture, distribution, sale, and/or supply by Defendant US Stem Cell Clinic LLC.

248.  The product had a design defect because it failed to perform as safely as an ordinary consumer would expect when used as intended, causing permanent damage to Jeannine Mallard.

249.  The  product's  risk  of  danger  in  the  design  outweighs  the  non-existent  benefits  of  a  therapy  with  no  evidence  of  therapeutic  value  to  a reasonable degree of scientific certainty.

250.  Defendant US Stem Cell Clinic LLC, through its defective product, directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

**COUNT 23    Strict Liability, Design Defect, Regenestem, LLC**

251.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

252.   Defendant Regenestem, LLC researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to create a product that was not defective.

253.   The product is defective because it was in a condition unreasonably dangerous to Jeannine Mallard when created, designed, manufactured, distributed, sold, and/or supplied by Defendant Regenestem, LLC.

254.   The product reached Jeannine Mallard without substantial change affecting that condition after creation, design, manufacture, distribution, sale, and/or supply by Defendant Regenestem, LLC.

255.   The product had a design defect because it failed to perform as safely as an ordinary consumer would expect when used as intended, causing permanent damage to Jeannine Mallard.

256.   The product's risk of danger in the design outweighs the non-existent benefits of a therapy with no evidence of therapeutic value to a reasonable degree of scientific certainty.

257.   Defendant U.S. Stem Cell, Inc., through its defective product, directly and proximately caused Jeannine Mallard serious permanent damage,

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.6666   F 305.285.1668

as alleged in detail below.

**COUNT 24    Strict Liability, Design Defect, Regenestem Network, LLC**

258. The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

259. Defendant Regenestem Network, LLC researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to create a product that was not defective.

260. The product is defective because it was in a condition unreasonably dangerous to Jeannine Mallard when created, designed, manufactured, distributed, sold, and/or supplied by Defendant Regenestem Network, LLC.

261. The product reached Jeannine Mallard without substantial change affecting that condition after creation, design, manufacture, distribution, sale, and/or supply by Defendant Regenestem Network, LLC.

262. The product had a design defect because it failed to perform as safely as an ordinary consumer would expect when used as intended, causing permanent damage to Jeannine Mallard.

263. The product's risk of danger in the design outweighs the non-existent benefits of a therapy with no evidence of therapeutic value to a reasonable degree of scientific certainty.

264. Defendant Regenestem Network, LLC, through its defective

product, directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

### COUNT 25    Strict Liability, Design Defect, Kristin C. Comella

265.    The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

266.    Defendant Kristin C. Comella researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to create a product that was not defective.

267.    The product is defective because it was in a condition unreasonably dangerous to Jeannine Mallard when created, designed, manufactured, distributed, sold, and/or supplied by Defendant Kristin C. Comella.

268.    The product reached Jeannine Mallard without substantial change affecting that condition after creation, design, manufacture, distribution, sale, and/or supply by Defendant Kristin C. Comella.

269.    The product had a design defect because it failed to perform as safely as an ordinary consumer would expect when used as intended, causing permanent damage to Jeannine Mallard.

270.    The product's risk of danger in the design outweighs the non-existent benefits of a therapy with no evidence of therapeutic value to a reasonable degree of scientific certainty.

271. Defendant Kristin C. Comella, through its defective product, directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

**COUNT 26      Strict Liability, Failure to Warn, U.S. Stem Cell, Inc.**

272. The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

273. Defendant U.S. Stem Cell, Inc. researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to warn of the risks associated with the use of the product.

274. The product was under the control Defendant U.S. Stem Cell, Inc. and was unaccompanied by appropriate warnings regarding the risk of severe ocular injuries. No warnings accurately reflect the risk, incidence, symptoms, scope, or severity of such injuries to Jeannine Mallard.

275. Defendant U.S. Stem Cell, Inc. downplayed the serious and dangerous side effects of the product to encourage sale of the product.

276. The product was defective and unreasonably dangerous when it left the possession of Defendant U.S. Stem Cell, Inc. in that it contained warnings insufficient to alert Jeannine Mallard to the dangerous risks and reactions associated with it, including, but not limited to severe ocular injuries. The particular risks were known, or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the

time of manufacture and distribution. Even though the Defendant knew or should have known of the risks and reactions associated with the product, Defendant U.S. Stem Cell, Inc. still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

277.  The product reached Jeannine Mallard without substantial change affecting that condition after creation, design, manufacture, distribution, sale, and/or supply by Defendant U.S. Stem Cell, Inc.

278.  The product was defective because the foreseeable risks of harm from the product could have been avoided by Defendant U.S. Stem Cell, Inc. by providing reasonable instructions or warnings about the high likelihood of adverse events such as blindness, pain, and damage to the eye via the compounded product and the failure to provide those instructions or warnings makes the product unreasonably dangerous.

279.  Plaintiff Jeannine Mallard used the product in the manner as indicated by Defendant U.S. Stem Cell, Inc.

280.  The Plaintiff did not have the same knowledge as Defendant U.S. Stem Cell, Inc. and no adequate warning was communicated to her.

281.  As a direct and proximate consequence of Defendant U.S. Stem Cell, Inc.'s actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

**COUNT 27    Strict Liability, Failure to Warn, US Stem Cell Clinic LLC**

282.  The Plaintiff adopts and realleges paragraphs 1 through 71 and

further allege:

283. Defendant US Stem Cell Clinic LLC, researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to warn of the risks associated with the use of the product.

284. The product was under the control Defendant US Stem Cell Clinic LLC and was unaccompanied by appropriate warnings regarding the risk of severe ocular injuries. No warnings accurately reflect the risk, incidence, symptoms, scope, or severity of such injuries to Jeannine Mallard.

285. Defendant US Stem Cell Clinic LLC downplayed the serious and dangerous side effects of the product to encourage sale of the product.

286. The product was defective and unreasonably dangerous when it left the possession of Defendant US Stem Cell Clinic LLC in that it contained warnings insufficient to alert Jeannine Mallard to the dangerous risks and reactions associated with it, including, but not limited to severe ocular injuries. The particular risks were known, or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution. Even though the Defendant knew or should have known of the risks and reactions associated with the product, Defendant US Stem Cell Clinic LLC still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the

risks associated with the product.

287.  The product reached Jeannine Mallard without substantial change affecting that condition after creation, design, manufacture, distribution, sale, and/or supply by Defendant US Stem Cell Clinic LLC.

288.  The product was defective because the foreseeable risks of harm from the product could have been avoided by Defendant US Stem Cell Clinic LLC by providing reasonable instructions or warnings about the high likelihood of adverse events such as blindness, pain, and damage to the eye via the compounded product and the failure to provide those instructions or warnings makes the product unreasonably dangerous.

289.  Plaintiff Jeannine Mallard used the product in the manner as indicated by Defendant US Stem Cell Clinic LLC.

290.  The Plaintiff did not have the same knowledge as Defendant US Stem Cell Clinic LLC and no adequate warning was communicated to her.

291.  As a direct and proximate consequence of Defendant US Stem Cell Clinic LLC actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

**COUNT 28    Strict Liability, Failure to Warn, Regenestem, LLC**

292.  The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

293.  Defendant Regenestem, LLC researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and

directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to warn of the risks associated with the use of the product.

294.   The product was under the control Defendant Regenestem, LLC and was unaccompanied by appropriate warnings regarding the risk of severe ocular injuries. No warnings accurately reflect the risk, incidence, symptoms, scope, or severity of such injuries to Jeannine Mallard.

295.   Defendant Regenestem, LLC downplayed the serious and dangerous side effects of the product to encourage sale of the product.

296.   The product was defective and unreasonably dangerous when it left the possession of Defendant Regenestem, LLC in that it contained warnings insufficient to alert Jeannine Mallard to the dangerous risks and reactions associated with it, including, but not limited to severe ocular injuries. The particular risks were known, or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution. Even though the Defendant knew or should have known of the risks and reactions associated with the product, Defendant Regenestem, LLC still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

297.   The product reached Jeannine Mallard without substantial change affecting that condition after creation, design, manufacture, distribution, sale, and/or supply by Defendant Regenestem, LLC.

298.   The product was defective because the foreseeable risks of harm

from the product could have been avoided by Defendant Regenestem, LLC by providing reasonable instructions or warnings about the high likelihood of adverse events such as blindness, pain, and damage to the eye via the compounded product and the failure to provide those instructions or warnings makes the product unreasonably dangerous.

299.  Plaintiff Jeannine Mallard used the product in the manner as indicated by Defendant Regenestem, LLC.

300.  The Plaintiff did not have the same knowledge as Defendant Regenestem, LLC and no adequate warning was communicated to her.

301.  As a direct and proximate consequence of Defendant Regenestem, LLC's actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

**COUNT 29      Strict Liability, Failure to Warn, Regenestem Network, LLC**

302.  The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

303.  Defendant Regenestem Network, LLC researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to warn of the risks associated with the use of the product.

304.  The product was under the control Defendant Regenestem Network, LLC and was unaccompanied by appropriate warnings regarding the

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668

risk of severe ocular injuries. No warnings accurately reflect the risk, incidence, symptoms, scope, or severity of such injuries to Jeannine Mallard.

305.   Defendant Regenestem Network, LLC downplayed the serious and dangerous side effects of the product to encourage sale of the product.

306.   The product was defective and unreasonably dangerous when it left the possession of Defendant Regenestem Network, LLC in that it contained warnings insufficient to alert Jeannine Mallard to the dangerous risks and reactions associated with it, including, but not limited to severe ocular injuries. The particular risks were known, or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution. Even though the Defendant knew or should have known of the risks and reactions associated with the product, Defendant Regenestem Network, LLC still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

307.   The product reached Jeannine Mallard without substantial change affecting that condition after creation, design, manufacture, distribution, sale, and/or supply by Defendant Regenestem Network, LLC.

308.   The product was defective because the foreseeable risks of harm from the product could have been avoided by Defendant Regenestem Network, LLC by providing reasonable instructions or warnings about the high likelihood of adverse events such as blindness, pain, and damage to the eye via the compounded product and the failure to provide those instructions or warnings

makes the product unreasonably dangerous.

309.   Plaintiff Jeannine Mallard used the product in the manner as indicated by Defendant Regenestem Network, LLC.

310.   The Plaintiff did not have the same knowledge as Defendant Regenestem Network, LLC and no adequate warning was communicated to her.

311.   As a direct and proximate consequence of Defendant Regenestem Network, LLC's actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

**COUNT 30     Strict Liability, Failure to Warn, Kristin C. Comella**

312.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

313.   Defendant Kristin C. Comella researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to warn of the risks associated with the use of the product.

314.   The product was under the control Defendant Kristin C. Comella and was unaccompanied by appropriate warnings regarding the risk of severe ocular injuries. No warnings accurately reflect the risk, incidence, symptoms, scope, or severity of such injuries to Jeannine Mallard.

315.   Defendant Kristin C. Comella downplayed the serious and dangerous side effects of the product to encourage sale of the product.

316.   The product was defective and unreasonably dangerous when it

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

left the possession of Defendant Kristin C. Comella in that it contained warnings insufficient to alert Jeannine Mallard to the dangerous risks and reactions associated with it, including, but not limited to severe ocular injuries. The particular risks were known, or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution. Even though the Defendant knew or should have known of the risks and reactions associated with the product, Defendant Kristin C. Comella still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

317. The product reached Jeannine Mallard without substantial change affecting that condition after creation, design, manufacture, distribution, sale, and/or supply by Defendant Kristin C. Comella.

318. The product was defective because the foreseeable risks of harm from the product could have been avoided by Defendant Kristin C. Comella by providing reasonable instructions or warnings about the high likelihood of adverse events such as blindness, pain, and damage to the eye via the compounded product and the failure to provide those instructions or warnings makes the product unreasonably dangerous.

319. Plaintiff Jeannine Mallard used the product in the manner as indicated by Defendant Kristin C. Comella.

320. The Plaintiff did not have the same knowledge as Defendant Kristin C. Comella and no adequate warning was communicated to her.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668

321.   As a direct and proximate consequence of Defendant Kristin C. Comella's actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

**COUNT 31      Negligence, Product Liability, U.S. Stem Cell Clinic, Inc.**

322.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

323.   Defendant U.S. Stem Cell, Inc. researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty of reasonable care to Jeannine Mallard, which is the care that a reasonably careful designer, manufacturer, seller, importer, distributor, and or/ supplier would use under like circumstances.

324.   Notwithstanding this duty of care, Defendant U.S. Stem Cell, Inc. breached its duty of care to Jeannine Mallard in the following ways:

a. Negligently failing to manufacture the product with the highly skilled personnel necessary to make therapeutic stem cells;

b. Negligently failing to design the product with the highly skilled personnel necessary to make therapeutic stem cells;

c. Negligently allowing Jeannine Mallard access to the product when she did not meet the criteria for receiving the product;

d. Negligently failing to warn Jeannine Mallard of the serious and dangerous side effects of the product to encourage sales of the product;

e. Negligently failing to warn Jeannine Mallard of the risk, incidence, symptoms, scope, or severity of the injuries produced by the product to Jeannine Mallard.

f.  Negligently failing to provide reasonable instructions and warnings about the high likelihood of adverse events such as blindness, pain, and eye damage to Jeannine Mallard;

g.  Negligently exposing Jeanine Mallard to a product that included a substance labeled and intended to be used for laboratory purposes only and never intended to be used in a surgical setting on a human patient;

h.  Negligently exposing Jeanine Mallard to a product that was manufactured in part or entirely at the premises of a janitorial and cleaning supply business lacking the necessary controls, policies, procedures and protocols to ensure the quality, efficacy, sterility and integrity of the product;

i.  Negligently exposing Jeanine Mallard to a product that was manufactured without oversight or approval by the FDA;

j.  Other negligent failures as determined in discovery.

325.  As a direct and proximate consequence of Defendant U.S. Stem Cell, Inc.'s actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

**COUNT 32    Negligence, Product Liability, US Stem Cell Clinic LLC**

326.  The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

327.  Defendant US Stem Cell Clinic LLC researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty of reasonable care to Jeannine Mallard, which is the care that a reasonably careful designer, manufacturer, seller, importer, distributor, and or/ supplier would use under like circumstances.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

328.   Notwithstanding this duty of care, Defendant US Stem Cell Clinic LLC, Inc. breached its duty of care to Jeannine Mallard in the following ways:

a. Negligently failing to manufacture the product with the highly skilled personnel necessary to make therapeutic stem cells;

b. Negligently failing to design the product with the highly skilled personnel necessary to make therapeutic stem cells;

c. Negligently allowing Jeannine Mallard access to the product when she did not meet the criteria for receiving the product;

d. Negligently failing to warn Jeannine Mallard of the serious and dangerous side effects of the product to encourage sales of the product;

e. Negligently failing to warn Jeannine Mallard of the risk, incidence, symptoms, scope, or severity of the injuries produced by the product to Jeannine Mallard.

f. Negligently failing to provide reasonable instructions and warnings about the high likelihood of adverse events such as blindness, pain, and eye damage to Jeannine Mallard;

g. Negligently exposing Jeanine Mallard to a product that included a substance labeled and intended to be used for laboratory purposes only and never intended to be used in a surgical setting on a human patient;

h. Negligently exposing Jeanine Mallard to a product that was manufactured in part or entirely at the premises of a janitorial and cleaning supply business lacking the necessary controls, policies, procedures and protocols to ensure the quality, efficacy, sterility and integrity of the product;

i. Negligently exposing Jeanine Mallard to a product that was manufactured without oversight or approval by the FDA;

j. Other negligent failures as determined in discovery.

329.   As a direct and proximate consequence of Defendant US Stem Cell Clinic LLC's actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668

**COUNT 33**      **Negligence, Product Liability, Regenestem, LLC**

330.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

331.   Defendant Regenestem, LLC researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty of reasonable care to Jeannine Mallard, which is the care that a reasonably careful designer, manufacturer, seller, importer, distributor, and or/ supplier would use under like circumstances.

332.   Notwithstanding this duty of care, Defendant Regenestem, LLC breached its duty of care to Jeannine Mallard in the following ways:

a.   Negligently failing to manufacture the product with the highly skilled personnel necessary to make therapeutic stem cells;

b.   Negligently failing to design the product with the highly skilled personnel necessary to make therapeutic stem cells;

c.   Negligently allowing Jeannine Mallard access to the product when she did not meet the criteria for receiving the product;

d.   Negligently failing to warn Jeannine Mallard of the serious and dangerous side effects of the product to encourage sales of the product;

e.   Negligently failing to warn Jeannine Mallard of the risk, incidence, symptoms, scope, or severity of the injuries produced by the product to Jeannine Mallard.

f.   Negligently failing to provide reasonable instructions and warnings about the high likelihood of adverse events such as blindness, pain, and eye damage to Jeannine Mallard;

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

g. Negligently exposing Jeanine Mallard to a product that included a substance labeled and intended to be used for laboratory purposes only and never intended to be used in a surgical setting on a human patient;

h. Negligently exposing Jeanine Mallard to a product that was manufactured in part or entirely at the premises of a janitorial and cleaning supply business lacking the necessary controls, policies, procedures and protocols to ensure the quality, efficacy, sterility and integrity of the product;

i. Negligently exposing Jeanine Mallard to a product that was manufactured without oversight or approval by the FDA;

j. Other negligent failures as determined in discovery.

333. As a direct and proximate consequence of Defendant Regenestem, LLC's actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

**COUNT 34    Negligence, Product Liability, Regenestem Network, LLC**

334. The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

335. Defendant Regenestem Network, LLC researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty of reasonable care to Jeannine Mallard, which is the care that a reasonably careful designer, manufacturer, seller, importer, distributor, and or/ supplier would use under like circumstances.

336. Notwithstanding this duty of care, Defendant Regenestem Network, LLC breached its duty of care to Jeannine Mallard in the following ways:

a. Negligently failing to manufacture the product with the highly skilled personnel necessary to make therapeutic stem cells;

b. Negligently failing to design the product with the highly skilled personnel necessary to make therapeutic stem cells;

c. Negligently allowing Jeannine Mallard access to the product when she did not meet the criteria for receiving the product;

d. Negligently failing to warn Jeannine Mallard of the serious and dangerous side effects of the product to encourage sales of the product;

e. Negligently failing to warn Jeannine Mallard of the risk, incidence, symptoms, scope, or severity of the injuries produced by the product to Jeannine Mallard.

f. Negligently failing to provide reasonable instructions and warnings about the high likelihood of adverse events such as blindness, pain, and eye damage to Jeannine Mallard;

g. Negligently exposing Jeanine Mallard to a product that included a substance labeled and intended to be used for laboratory purposes only and never intended to be used in a surgical setting on a human patient;

h. Negligently exposing Jeanine Mallard to a product that was manufactured in part or entirely at the premises of a janitorial and cleaning supply business lacking the necessary controls, policies, procedures and protocols to ensure the quality, efficacy, sterility and integrity of the product;

i. Negligently exposing Jeanine Mallard to a product that was manufactured without oversight or approval by the FDA;

j. Other negligent failures as determined in discovery.

337.   As a direct and proximate consequence of Defendant Regenestem Network, LLC's actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

**COUNT 35**   **Negligence, Product Liability, Kristin C. Comella**

338.   The Plaintiff adopts and realleges paragraphs 1 through 71 and

further allege:

339.   Defendant Kristin C. Comella researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty of reasonable care to Jeannine Mallard, which is the care that a reasonably careful designer, manufacturer, seller, importer, distributor, and or/ supplier would use under like circumstances.

340.   Notwithstanding this duty of care, Defendant Kristin C. Comella breached its duty of care to Jeannine Mallard in the following ways:

a.  Negligently failing to manufacture the product with the highly skilled personnel necessary to make therapeutic stem cells;

b.  Negligently failing to design the product with the highly skilled personnel necessary to make therapeutic stem cells;

c.  Negligently allowing Jeannine Mallard access to the product when she did not meet the criteria for receiving the product;

d.  Negligently failing to warn Jeannine Mallard of the serious and dangerous side effects of the product to encourage sales of the product;

e.  Negligently failing to warn Jeannine Mallard of the risk, incidence, symptoms, scope, or severity of the injuries produced by the product to Jeannine Mallard.

f.  Negligently failing to provide reasonable instructions and warnings about the high likelihood of adverse events such as blindness, pain, and eye damage to Jeannine Mallard;

g.  Negligently exposing Jeanine Mallard to a product that included a substance labeled and intended to be used for laboratory purposes only and never intended to be used in a surgical setting on a human patient;

h.  Negligently exposing Jeanine Mallard to a product that was

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

manufactured in part or entirely at the premises of a janitorial and cleaning supply business lacking the necessary controls, policies, procedures and protocols to ensure the quality, efficacy, sterility and integrity of the product;

i. Negligently exposing Jeanine Mallard to a product that was manufactured without oversight or approval by the FDA;

j. Other negligent failures as determined in discovery.

341. As a direct and proximate consequence of Defendant Kristin C. Comella's actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

<u>**COUNT 36     Negligence, Kristin C. Comella**</u>

342. The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

343. Defendant Kristin C. Comella is not a medical doctor and yet actively participated in or directed a medical procedure performed on Jeannine Mallard, and therefore had a duty of reasonable care to Jeannine Mallard, which is the care that a reasonably careful person would use under like circumstances.

344. Notwithstanding this duty of care, Defendant Kristin C. Comella breached her duty of care to Jeannine Mallard by (a) participating in and performing a procedure that she was not qualified nor trained to perform, and (b) exposing Jeanine Mallard to a product that was unsafe for use on human patients.

345. As a direct and proximate consequence of Defendant Kristin C. Comella's negligence, plaintiff Jeannine Mallard suffered permanent damage,

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

as described in detail below.

### COUNT 37     Negligent Misrepresentation, Kristin C. Comella

346. The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

347. Defendant Kristin C. Comella, who is not a medical doctor, negligently represented to Jeannine Mallard that she was a candidate to undergo a "clinical trial" that would be beneficial to her medical condition.

348. At the time Defendant Comella made these statements to Ms. Mallard, Defendant Comella knew or should have known that these statements were misleading. The "stem cell" clinical trial was not being operated as appropriately as a "clinical trial," and the "stem cell" therapy offered would not benefit Ms. Mallard and would likely, in fact, cause her medical condition to worsen.

349. Ms. Mallard relied upon the negligent representations of Ms. Comella in agreeing to undergo stem cell therapy treatment, and did pay for and undergo that treatment.

350. As a result of Ms. Comella's negligent representations, Ms. Mallard expended monies to undergo an unhelpful and injurious procedure and suffered a permanent physical injury. Accordingly, Plaintiff Jeannine Mallard claims the damages set forth below.

### COUNT 38     Vicarious Liability for Kristin C. Comella's Acts, U.S. Stem Cell Clinic, Inc.

351. The Plaintiff adopts and realleges paragraphs 1 through 71, and further alleges:

352. At all times material to this cause of action, Kristen C. Comella was the principal, agent, servant, or employee of U.S. Stem Cell Clinic, Inc., f/k/a Bioheart, Inc. and was acting within the course and scope of her employment or agency and under its control.

353. Therefore, Defendant U.S. Stem Cell Clinic, Inc., f/k/a Bioheart, Inc. is vicariously liable for the negligence and other wrongful conduct of Kristin C. Comella as set forth in the Counts alleged, Ms. Comella above, specifically, Counts 5, 10, 15, 20, 25, 30, 35, 36, and 37.

## COUNT 39    Vicarious Liability for Kristen C. Comella's Acts, U.S. Stem Cell Clinic, LLC

354. The Plaintiff adopts and realleges paragraphs 1 through 71, and further alleges:

355. At all times material to this cause of action, Kristen C. Comella was the principal, agent, servant, or employee of U.S. Stem Cell Clinic, LLC and was acting within the course and scope of her employment or agency and under its control.

356. Therefore, Defendant U.S. Stem Cell Clinic, LLC is vicariously liable for the negligence and other wrongful conduct of Kristin C. Comella as set forth in the Counts alleged, Ms. Comella above, specifically, Counts 5, 10, 15, 20, 25, 30, 35, 36, and 37.

**COUNT 40**      **Professional Negligence. Shareen Greenbaum, M.D.**

357.  The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

358.  The Defendant Shareen Greenbaum, M.D. held herself out to the public in general and Ms. Mallard in particular as a healthcare provider capable of and who undertook the corresponding duty to Ms. Mallard of providing healthcare services to Ms. Mallard in accordance with that level of care and skill that is recognized as acceptable and appropriate by reasonably prudent similar healthcare providers under the same or similar circumstances.

359.  Notwithstanding the duties undertaken, Defendant Dr. Greenbaum breached her duties by

a.      Negligently clearing Ms. Mallard to undergo the U.S. Stem Cell, Inc.'s stem cell therapy procedure to treat her macular degeneration;

b.      Negligently advising Ms. Mallard on a stem cell procedure, about which Dr. Greenbaum lacked expertise and experience;

c.      Negligently representing to Ms. Mallard that U.S. Stem Cell, Inc.'s stem cell therapy was capable of treating the progression of macular degeneration;

d.      Negligently failing to warn Ms. Mallard of the serious and dangerous side effects and risk of injury of the U.S. Stem Cell, Inc.'s stem cell therapy;

e.      Negligently allowing Ms. Mallard to undergo the stem cell therapy when Dr. Greenbaum knew or should have known that U.S. Stem Cell, Inc. was not operating a legitimate clinical trial and that the stem cell therapy it was selling to Ms. Mallard would not provide any benefit for her macular degeneration;

f.      Negligently allowing Ms. Mallard to undergo a stem cell therapy procedure that Dr. Greenbaum knew or should have known would not be performed by a qualified medical professional;

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

g.      Negligently allowing Ms. Mallard to go forward with the stem cell therapy when she did not meet the criteria for inclusion in the clinical trial

h.      Negligently going forward with this stem cell therapy on BOTH eyes without ensuring that the procedure was both safe and effective;

i.      Negligently exposing Jeanine Mallard to a product that included a substance labeled and intended to be used for laboratory purposes only and never intended to be used in a surgical setting on a human patient;

j.      Negligently exposing Jeanine Mallard to a product that was manufactured in part or entirely at the premises of a janitorial and cleaning supply business lacking the necessary controls, policies, procedures and protocols to ensure the quality, efficacy, sterility and integrity of the product;

k.      Negligently exposing Jeanine Mallard to a product that was manufactured without oversight or approval by the FDA;

l.      Other negligent failures as determined in discovery.

360.   As a direct and proximate cause of the negligence of Defendant Dr. Greenbaum, Ms. Mallard underwent the U.S. Stem Cell, Inc. stem cell therapy procedure and sustained serious permanent damages as alleged in detail below.

## COUNT 41      Vicarious Liability for Shareen Greenbaum, M.D.'s Acts, Hollywood Eye Institute, P.A.

361.   The Plaintiff adopts and realleges paragraphs 1 through 71, and further alleges:

362.   At all times material to this cause of action, Dr. Greenbaum was the principal, agent, servant, or employee of Hollywood Eye Institute, P.A., her professional association, and was acting within the course and scope of her employment or agency and under its control.

363.   Therefore, Defendant Hollywood Eye Institute, P.A. is vicariously

liable for the negligence of Dr. Greenbaum, as set forth in Count 40.

**COUNT 42        Express Warranty, Global Stem Cells Group, Inc.**

364.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

365.   The product developed, designed, tested, manufactured, inspected, distributed, marketed, promoted, sold, supplied, and otherwise released into the stream of commerce by Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC was defective because it did not conform to representations of fact made by Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC orally and in writing, through its employees and agents, in connection with the transaction on which Plaintiff Mallard relied in the use of the product.

366.   Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC represented the fact that the product was capable of treating and stopping the progression of macular degeneration.

367.   Despite this representation of fact, no scientific evidence shows that the product provides any benefit for macular degeneration.

368.   No peer-reviewed literature shows the product provides any benefit for macular degeneration.

369.   The prevailing opinion in the scientific community is that the product cannot provide a benefit for macular degeneration.

370.   Creating, designing, manufacturing, distributing, selling, and supplying a product with such an express promise to stop the progression of

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

macular degeneration requires safeguards not taken by Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC, and expertise not possessed by Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC.

371.   Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC knew the product was not capable of treating or stopping the progression of macular degeneration at this stage in product development, but promoted the treatment as such without any evidence to support such promotion.

372.   The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

373.   As a direct and proximate cause of the breach of express warranty alleged, Plaintiff Mallard sustained serious permanent damages as alleged in detail below.

**COUNT 43      Express Warranty, Stem Cell Training, Inc.**

374.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

375.   The product developed, designed, tested, manufactured, inspected, distributed, marketed, promoted, sold, supplied, and otherwise released into the stream of commerce by Defendant Stem Cell Training, Inc. was defective because it did not conform to representations of fact made by Defendant Stem Cell Training, Inc. orally and in writing, through its employees and agents, in connection with the transaction on which Plaintiff Mallard relied in the use of

the product.

376. Defendant Stem Cell Training, Inc. represented the fact that the product was capable of treating and stopping the progression of macular degeneration.

377. Despite this representation of fact, no scientific evidence shows that the product provides any benefit for macular degeneration.

378. No peer-reviewed literature shows the product provides any benefit for macular degeneration.

379. The prevailing opinion in the scientific community is that the product cannot provide a benefit for macular degeneration.

380. Creating, designing, manufacturing, distributing, selling, and supplying a product with such an express promise to stop the progression of macular degeneration requires safeguards not taken by Defendant Stem Cell Training, Inc. and expertise not possessed by Defendant Stem Cell Training, Inc.

381. Defendant Stem Cell Training, Inc. knew the product was not capable of treating or stopping the progression of macular degeneration at this stage in product development, but promoted the treatment as such without any evidence to support such promotion.

382. The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

383. As a direct and proximate cause of the breach of express warranty alleged, Plaintiff Mallard sustained serious permanent damages as alleged in

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

detail below.

**COUNT 44      Implied Warranty of Merchantability, Global Stem Cells Group, Inc.**

384.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

385.   The product was defective because it was not reasonably fit for both the uses intended and the uses reasonably foreseeable by Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC.

386.   The product is not fit for use as a product for any purpose.

387.   The product is not fit for the use intended by the Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC, namely to give a therapeutic benefit and stop the progression of macular degeneration.

388.   The product was defective for its intended and reasonably foreseeable uses.

389.   Privity of contract exists between Plaintiff Mallard and Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC.

390.   Plaintiff Mallard justifiably relied on the Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC's representations about the product when agreeing to use the product to stop the progression of her macular degeneration.

391.   The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668

**COUNT 45     Implied Warranty of Merchantability, Stem Cell Training, Inc.**

392.  The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

393.  The product was defective because it was not reasonably fit for both the uses intended and the uses reasonably foreseeable by Defendant Stem Cell Training, Inc.

394.  The product is not fit for use as a product for any purpose.

395.  The product is not fit for the use intended by the Defendant Stem Cell Training, Inc., namely to give a therapeutic benefit and stop the progression of macular degeneration.

396.  The product was defective for its intended and reasonably foreseeable uses.

397.  Privity of contract exists between Plaintiff Mallard and Defendant Stem Cell Training, Inc.

398.  Plaintiff Mallard justifiably relied on the Defendant Defendant Stem Cell Training, Inc.'s representations about the product when agreeing to use the product to stop the progression of her macular degeneration.

399.  The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

## COUNT 46      Implied Warranty of Fitness for a Particular Purpose, Global

## Stem Cells Group, Inc.

400. The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

401. The product was defective because it was not reasonably fit for the specific purpose for which Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC knowingly sold the product and for which, in reliance on the judgment of Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC the Plaintiff Jeannine Mallard bought the product.

402. The Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC knowingly manufactured and sold the product for the specific purpose of treating and stopping the progression macular degeneration.

403. Privity of contract exists between Plaintiff Jeannine Mallard and Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC.

404. The product did not treat or stop the progression of macular degeneration, nor was it approved for any such use.

405. The Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC received notice of the breach of warranty when it discovered the condition of Jeannine Mallard's eyes after receiving the product.

406. As a direct and proximate cause of the breach of implied warranty of fitness for a particular purpose alleged, Jeannine Mallard sustained serious permanent damages as alleged in detail below.

**COUNT 47     Implied Warranty of Fitness for a Particular Purpose, Stem Cell Training, Inc.**

407.  The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

408.  The product was defective because it was not reasonably fit for the specific purpose for which Defendant Stem Cell Training, Inc. knowingly sold the product and for which, in reliance on the judgment of Defendant Stem Cell Training, Inc. the Plaintiff Jeannine Mallard bought the product.

409.  The Defendant Stem Cell Training, Inc. knowingly manufactured and sold the product for the specific purpose of treating and stopping the progression macular degeneration.

410.  Privity of contract exists between Plaintiff Jeannine Mallard and Defendant Stem Cell Training, Inc.

411.  The product did not treat or stop the progression of macular degeneration, nor was it approved for any such use.

412.  The Defendant Stem Cell Training, Inc. received notice of the breach of warranty when it discovered the condition of Jeannine Mallard's eyes after receiving the product.

413.  As a direct and proximate cause of the breach of implied warranty of fitness for a particular purpose alleged, Jeannine Mallard sustained serious permanent damages as alleged in detail below.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1688

**COUNT 48**      **Strict Liability, Manufacturing Defect, Global Stem Cells**

**Group, Inc.**

414.  The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

415.  Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to create a product that was not defective.

416.  The product created, designed, manufactured, distributed, sold, and/or supplied by Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC was defective because of a manufacturing defect.

417.  The product reached Jeannine Mallard in a condition unreasonably dangerous to Jeannine Mallard.

418.  The product reached Jeannine Mallard without substantial change affecting its condition.

419.  The product was unreasonably dangerous because of a manufacturing defect because it was different from its intended design and failed to perform as safely as the intended design would have performed, since the intended design required extreme technical competence in manufacturing stem cells suited for the purpose of injection to treat or stop the acceleration of macular degeneration, and such technical skill was not used for the product at

issue.

420.   The Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC's defective product directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

**COUNT 49**     **Strict Liability, Manufacturing Defect, Stem Cell Training, Inc.**

421.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

422.   Defendant Stem Cell Training, Inc. researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to create a product that was not defective.

423.   The product created, designed, manufactured, distributed, sold, and/or supplied by Defendant Stem Cell Training, Inc. was defective because of a manufacturing defect.

424.   The product reached Jeannine Mallard in a condition unreasonably dangerous to Jeannine Mallard.

425.   The product reached Jeannine Mallard without substantial change affecting its condition.

426.   The product was unreasonably dangerous because of a manufacturing defect because it was different from its intended design and failed to perform as safely as the intended design would have performed, since the intended design required extreme technical competence in manufacturing

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

stem cells suited for the purpose of injection to treat or stop the acceleration of macular degeneration, and such technical skill was not used for the product at issue.

427.   The Defendant Stem Cell Training, Inc.'s defective product directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

**COUNT 50    Strict Liability, Design Defect, Global Stem Cells Group, Inc.**

428.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

429.   Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to create a product that was not defective.

430.   The product is defective because it was in a condition unreasonably dangerous to Jeannine Mallard when created, designed, manufactured, distributed, sold, and/or supplied by Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC.

431.   The product reached Jeannine Mallard without substantial change affecting that condition after creation, design, manufacture, distribution, sale, and/or supply by Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC.

432.   The product had a design defect because it failed to perform as safely as an ordinary consumer would expect when used as intended, causing permanent damage to Jeannine Mallard.

433.   The product's risk of danger in the design outweighs the non-existent benefits of a therapy with no evidence of therapeutic value to a reasonable degree of scientific certainty.

434.   Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC, through its defective product, directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

**COUNT 51     Strict Liability, Design Defect, Stem Cell Training, Inc.**

435.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

436.   Defendant Stem Cell Training, Inc. researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to create a product that was not defective.

437.   The product is defective because it was in a condition unreasonably dangerous to Jeannine Mallard when created, designed, manufactured, distributed, sold, and/or supplied by Defendant Stem Cell Training, Inc.

438.   The product reached Jeannine Mallard without substantial change affecting that condition after creation, design, manufacture, distribution, sale,

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

and/or supply by Defendant Stem Cell Training, Inc.

439.   The product had a design defect because it failed to perform as safely as an ordinary consumer would expect when used as intended, causing permanent damage to Jeannine Mallard.

440.   The product's risk of danger in the design outweighs the non-existent benefits of a therapy with no evidence of therapeutic value to a reasonable degree of scientific certainty.

441.   Defendant Stem Cell Training, Inc., through its defective product, directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

**COUNT 52     Strict Liability, Failure To Warn, Global Stem Cells Group, Inc.**

442.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

443.   Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to warn of the risks associated with the use of the product.

444.   The product was under the control Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC and was unaccompanied by appropriate warnings regarding the risk of severe ocular injuries. No warnings accurately reflect the risk, incidence, symptoms, scope, or severity of such

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

injuries to Jeannine Mallard.

445. Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC downplayed the serious and dangerous side effects of the product to encourage sale of the product.

446. The product was defective and unreasonably dangerous when it left the possession of Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC in that it contained warnings insufficient to alert Jeannine Mallard to the dangerous risks and reactions associated with it, including, but not limited to severe ocular injuries. The particular risks were known, or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution. Even though the Defendant knew or should have known of the risks and reactions associated with the product, Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

447. The product reached Jeannine Mallard without substantial change affecting that condition after creation, design, manufacture, distribution, sale, and/or supply by Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC.

448. The product was defective because the foreseeable risks of harm from the product could have been avoided by Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC by providing reasonable

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668

instructions or warnings about the high likelihood of adverse events such as blindness, pain, and damage to the eye via the compounded product and the failure to provide those instructions or warnings makes the product unreasonably dangerous.

449. Plaintiff Jeannine Mallard used the product in the manner as indicated by Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC.

450. The Plaintiff did not have the same knowledge as Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC and no adequate warning was communicated to her.

451. As a direct and proximate consequence of Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC's actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

**COUNT 53      Strict Liability, Failure To Warn, Stem Cell Training, Inc.**

452. The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

453. Defendant Stem Cell Training, Inc. researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to warn of the risks associated with the use of the product.

454. The product was under the control Defendant Stem Cell Training, Inc. and was unaccompanied by appropriate warnings regarding the risk of severe ocular injuries. No warnings accurately reflect the risk, incidence, symptoms, scope, or severity of such injuries to Jeannine Mallard.

455. Defendant Stem Cell Training, Inc. downplayed the serious and dangerous side effects of the product to encourage sale of the product.

456. The product was defective and unreasonably dangerous when it left the possession of Defendant Stem Cell Training, Inc. in that it contained warnings insufficient to alert Jeannine Mallard to the dangerous risks and reactions associated with it, including, but not limited to severe ocular injuries. The particular risks were known, or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution. Even though the Defendant knew or should have known of the risks and reactions associated with the product, Defendant Stem Cell Training, Inc. still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

457. The product reached Jeannine Mallard without substantial change affecting that condition after creation, design, manufacture, distribution, sale, and/or supply by Defendant Stem Cell Training, Inc.

458. The product was defective because the foreseeable risks of harm from the product could have been avoided by Defendant Stem Cell Training, Inc. by providing reasonable instructions or warnings about the high likelihood

of adverse events such as blindness, pain, and damage to the eye via the compounded product and the failure to provide those instructions or warnings makes the product unreasonably dangerous.

459. Plaintiff Jeannine Mallard used the product in the manner as indicated by Defendant Stem Cell Training, Inc.

460. The Plaintiff did not have the same knowledge as Defendant Stem Cell Training, Inc. and no adequate warning was communicated to her.

461. As a direct and proximate consequence of Defendant Stem Cell Training, Inc.'s actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

**COUNT 54    Negligence, Product Liability, Global Stem Cells Group, Inc.**

462. The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

463. Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty of reasonable care to Jeannine Mallard, which is the care that a reasonably careful designer, manufacturer, seller, importer, distributor, and or/ supplier would use under like circumstances.

464. Notwithstanding this duty of care, Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC breached its duty of care to

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

Jeannine Mallard in the following ways:

a.     Negligently failing to manufacture the product with the highly skilled personnel necessary to make therapeutic stem cells;

b.     Negligently providing training to physicians and other professionals regarding therapeutic stem cell treatments;

c.     Negligently failing to design the product with the highly skilled personnel necessary to make therapeutic stem cells;

d.     Negligently allowing Jeannine Mallard access to the product when she did not meet the criteria for receiving the product;

e.     Negligently failing to warn Jeannine Mallard of the serious and dangerous side effects of the product to encourage sales of the product;

f.     Negligently failing to warn Jeannine Mallard of the risk, incidence, symptoms, scope, or severity of the injuries produced by the product to Jeannine Mallard.

g.     Negligently failing to provide reasonable instructions and warnings about the high likelihood of adverse events such as blindness, pain, and eye damage to Jeannine Mallard;

h.     Negligently exposing Jeanine Mallard to a product that included a substance labeled and intended to be used for laboratory purposes only and never intended to be used in a surgical setting on a human patient;

i.     Negligently exposing Jeanine Mallard to a product that was manufactured in part or entirely at the premises of a janitorial and cleaning supply business lacking the necessary controls, policies, procedures and protocols to ensure the quality, efficacy, sterility and integrity of the product;

j.     Negligently exposing Jeanine Mallard to a product that was manufactured without oversight or approval by the FDA;

k.     Other negligent failures as determined in discovery.

465.   As a direct and proximate consequence of Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC's actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent

damage, as described in detail below.

### COUNT 55    Negligence, Product Liability, Stem Cell Training, Inc.

466.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

467.   Defendant Stem Cell Training, Inc. researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty of reasonable care to Jeannine Mallard, which is the care that a reasonably careful designer, manufacturer, seller, importer, distributor, and or/ supplier would use under like circumstances.

468.   Notwithstanding this duty of care, Defendant Stem Cell Training, Inc. breached its duty of care to Jeannine Mallard in the following ways:

a.      Negligently failing to manufacture the product with the highly skilled personnel necessary to make therapeutic stem cells;

b.      Negligently providing training to physicians and other professionals regarding therapeutic stem cell treatments;

c.      Negligently failing to design the product with the highly skilled personnel necessary to make therapeutic stem cells;

d.      Negligently allowing Jeannine Mallard access to the product when she did not meet the criteria for receiving the product;

e.      Negligently failing to warn Jeannine Mallard of the serious and dangerous side effects of the product to encourage sales of the product;

f.      Negligently failing to warn Jeannine Mallard of the risk, incidence, symptoms, scope, or severity of the injuries produced by the product to Jeannine Mallard.

g.      Negligently failing to provide reasonable instructions and warnings about the high likelihood of adverse events such as blindness, pain, and eye damage to Jeannine Mallard;

h.      Negligently exposing Jeanine Mallard to a product that included a substance labeled and intended to be used for laboratory purposes only and never intended to be used in a surgical setting on a human patient;

i.      Negligently exposing Jeanine Mallard to a product that was manufactured in part or entirely at the premises of a janitorial and cleaning supply business lacking the necessary controls, policies, procedures and protocols to ensure the quality, efficacy, sterility and integrity of the product;

j.      Negligently exposing Jeanine Mallard to a product that was manufactured without oversight or approval by the FDA;

k.      Other negligent failures as determined in discovery.

469.  As a direct and proximate consequence of Defendant Stem Cell Training, Inc.'s actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

### COUNT 56      Negligence, Global Stem Cells Group, Inc.

470.  The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

471.  Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC administered training and education of personnel associated with U.S. Stem Cell Clinic, Inc. and U.S. Stem Cell Clinic LLC in the administration of therapeutic stem cell treatment procedures. Therefore, it had a duty to patients of U.S. Stem Cell Clinic, Inc. and U.S. Stem Cell Clinic LLC to exercise reasonable care in the provision of such training and education.

472.  Notwithstanding this duty of care, Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC breached its duty by

negligently failing to properly train personnel associated with U.S. Stem Cell Clinic, Inc. and U.S. Stem Cell Clinic LLC in the administration of therapeutic stem cell treatment procedures.

473. As a direct and proximate consequence of Defendant Global Stem Cells Group, Inc., a/k/a Global Stem Cells Group, LLC's negligence, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

<u>**COUNT 57**</u>   <u>**Negligence, Stem Cell Training, Inc.**</u>

474. The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

475. Defendant Stem Cell Training, Inc. administered training and education of personnel associated with U.S. Stem Cell Clinic, Inc. and U.S. Stem Cell Clinic LLC in the administration of therapeutic stem cell treatment procedures. Therefore, it had a duty to patients of U.S. Stem Cell Clinic, Inc. and U.S. Stem Cell Clinic LLC to exercise reasonable care in the provision of such training and education.

476. Notwithstanding this duty of care, Defendant Stem Cell Training, Inc. breached its duty by negligently failing to properly train personnel associated with U.S. Stem Cell Clinic, Inc. and U.S. Stem Cell Clinic LLC in the administration of therapeutic stem cell treatment procedures.

477. As a direct and proximate consequence of Defendant Stem Cell Training, Inc.'s negligence, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668

## COUNT 58    Express Warranty, Pavillion Foods, Inc.

478.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

479.   The product developed, designed, tested, manufactured, inspected, distributed, marketed, promoted, sold, supplied, and otherwise released into the stream of commerce by Defendant Pavillion Foods, Inc., d/b/a Palm Supply was defective because it did not conform to representations of fact made by Defendant Pavillion Foods, Inc., d/b/a Palm Supply orally and in writing, through its employees and agents, in connection with the transaction on which Plaintiff Mallard relied in the use of the product.

480.   Defendant Pavillion Foods, Inc., d/b/a Palm Supply represented the fact that the product was capable of treating and stopping the progression of macular degeneration.

481.   Despite this representation of fact, no scientific evidence shows that the product provides any benefit for macular degeneration.

482.   No peer-reviewed literature shows the product provides any benefit for macular degeneration.

483.   The prevailing opinion in the scientific community is that the product cannot provide a benefit for macular degeneration.

484.   Creating, designing, manufacturing, distributing, selling, and supplying a product with such an express promise to stop the progression of macular degeneration requires safeguards not taken by Defendant Pavillion Foods, Inc., d/b/a Palm Supply, and expertise not possessed by Defendant

Pavillion Foods, Inc., d/b/a Palm Supply.

485.   Defendant Pavillion Foods, Inc., d/b/a Palm Supply knew the product was not capable of treating or stopping the progression of macular degeneration at this stage in product development, but promoted the treatment as such without any evidence to support such promotion.

486.   The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

487.   As a direct and proximate cause of the breach of express warranty alleged, Plaintiff Mallard sustained serious permanent damages as alleged in detail below.

### COUNT 59     Express Warranty, Pavillion Scientific, Inc.

488.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

489.   The product developed, designed, tested, manufactured, inspected, distributed, marketed, promoted, sold, supplied, and otherwise released into the stream of commerce by Defendant Pavillion Scientific, Inc. was defective because it did not conform to representations of fact made by Defendant Pavillion Scientific, Inc. orally and in writing, through its employees and agents, in connection with the transaction on which Plaintiff Mallard relied in the use of the product.

490.   Defendant Pavillion Scientific, Inc. represented the fact that the product was capable of treating and stopping the progression of macular degeneration.

491.   Despite this representation of fact, no scientific evidence shows that the product provides any benefit for macular degeneration.

492.   No peer-reviewed literature shows the product provides any benefit for macular degeneration.

493.   The prevailing opinion in the scientific community is that the product cannot provide a benefit for macular degeneration.

494.   Creating, designing, manufacturing, distributing, selling, and supplying a product with such an express promise to stop the progression of macular degeneration requires safeguards not taken by Defendant Pavillion Scientific, Inc. and expertise not possessed by Defendant Pavillion Scientific, Inc.

495.   Defendant Pavillion Scientific, Inc. knew the product was not capable of treating or stopping the progression of macular degeneration at this stage in product development, but promoted the treatment as such without any evidence to support such promotion.

496.   The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

497.   As a direct and proximate cause of the breach of express warranty alleged, Plaintiff Mallard sustained serious permanent damages as alleged in detail below.

**COUNT 60     Implied Warranty of Merchantability, Pavillion Foods, Inc.**

498.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

499.  The product was defective because it was not reasonably fit for both the uses intended and the uses reasonably foreseeable by Defendant Pavillion Foods, Inc., d/b/a Palm Supply

500.  The product is not fit for use as a product for any purpose.

501.  The product is not fit for the use intended by the Defendant Pavillion Foods, Inc., d/b/a Palm Supply, namely to give a therapeutic benefit and stop the progression of macular degeneration.

502.  The product was defective for its intended and reasonably foreseeable uses.

503.  Privity of contract exists between Plaintiff Mallard and Defendant Pavillion Foods, Inc., d/b/a Palm Supply

504.  Plaintiff Mallard justifiably relied on the Defendant Pavillion Foods, Inc., d/b/a Palm Supply's representations about the product when agreeing to use the product to stop the progression of her macular degeneration.

505.  The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

**COUNT 61**      **Implied Warranty Of Merchantability, Pavillion Scientific, Inc.**

506.  The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

507.  The product was defective because it was not reasonably fit for both the uses intended and the uses reasonably foreseeable by Defendant Pavillion Scientific, Inc.

508.  The product is not fit for use as a product for any purpose.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668

509.   The product is not fit for the use intended by the Defendant Pavillion Scientific, Inc., namely to give a therapeutic benefit and stop the progression of macular degeneration.

510.   The product was defective for its intended and reasonably foreseeable uses.

511.   Privity of contract exists between Plaintiff Mallard and Defendant Pavillion Scientific, Inc.

512.   Plaintiff Mallard justifiably relied on the Defendant Pavillion Scientific, Inc.'s representations about the product when agreeing to use the product to stop the progression of her macular degeneration.

513.   The Defendant received notice of the breach of warranty when it discovered the condition of Plaintiff Mallard's eyes after receiving the product.

**COUNT 62**      **Implied Warranty Of Fitness for a Particular Purpose, Pavillion Foods, Inc.**

514.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

515.   The product was defective because it was not reasonably fit for the specific purpose for which Defendant Pavillion Foods, Inc., d/b/a Palm Supply knowingly sold the product and for which, in reliance on the judgment of Defendant Pavillion Foods, Inc., d/b/a Palm Supply the Plaintiff Jeannine Mallard bought the product.

516.   The Defendant Pavillion Foods, Inc., d/b/a Palm Supply knowingly manufactured and sold the product for the specific purpose of treating and

stopping the progression macular degeneration.

517.   Privity of contract exists between Plaintiff Jeannine Mallard and Defendant Pavillion Foods, Inc., d/b/a Palm Supply

518.   The product did not treat or stop the progression of macular degeneration, nor was it approved for any such use.

519.   The Defendant Pavillion Foods, Inc., d/b/a Palm Supply received notice of the breach of warranty when it discovered the condition of Jeannine Mallard's eyes after receiving the product.

520.   As a direct and proximate cause of the breach of implied warranty of fitness for a particular purpose alleged, Jeannine Mallard sustained serious permanent damages as alleged in detail below.

## COUNT 63        Implied Warranty Of Fitness for a Particular Purpose, Pavillion Scientific, Inc.

521.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

522.   The product was defective because it was not reasonably fit for the specific purpose for which Defendant Pavillion Scientific, Inc. knowingly sold the product and for which, in reliance on the judgment of Defendant Pavillion Scientific, Inc. the Plaintiff Jeannine Mallard bought the product.

523.   The Defendant Pavillion Scientific, Inc. knowingly manufactured and sold the product for the specific purpose of treating and stopping the progression macular degeneration.

524.   Privity of contract exists between Plaintiff Jeannine Mallard and

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

Defendant Pavillion Scientific, Inc.

525. The product did not treat or stop the progression of macular degeneration, nor was it approved for any such use.

526. The Defendant Pavillion Scientific, Inc. received notice of the breach of warranty when it discovered the condition of Jeannine Mallard's eyes after receiving the product.

527. As a direct and proximate cause of the breach of implied warranty of fitness for a particular purpose alleged, Jeannine Mallard sustained serious permanent damages as alleged in detail below.

**COUNT 64**    **Strict Liability, Manufacturing Defect, Pavillion Foods, Inc.**

528. The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

529. Defendant Pavillion Foods, Inc., d/b/a Palm Supply researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to create a product that was not defective.

530. The product created, designed, manufactured, distributed, sold, and/or supplied by Defendant Pavillion Foods, Inc., d/b/a Palm Supply was defective because of a manufacturing defect.

531. The product reached Jeannine Mallard in a condition unreasonably dangerous to Jeannine Mallard.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

532.   The product reached Jeannine Mallard without substantial change affecting its condition.

533.   The product was unreasonably dangerous because of a manufacturing defect because it was different from its intended design and failed to perform as safely as the intended design would have performed, since the intended design required extreme technical competence in manufacturing stem cells suited for the purpose of injection to treat or stop the acceleration of macular degeneration, and such technical skill was not used for the product at issue.

534.   The Defendant Pavillion Foods, Inc., d/b/a Palm Supply's defective product directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

**COUNT 65    Strict Liability, Manufacturing Defect, Pavillion Scientific, Inc.**

535.   The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

536.   Defendant Pavillion Scientific, Inc. researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to create a product that was not defective.

537.   The product created, designed, manufactured, distributed, sold, and/or supplied by Defendant Pavillion Scientific, Inc. was defective because of a manufacturing defect.

538. The product reached Jeannine Mallard in a condition unreasonably dangerous to Jeannine Mallard.

539. The product reached Jeannine Mallard without substantial change affecting its condition.

540. The product was unreasonably dangerous because of a manufacturing defect because it was different from its intended design and failed to perform as safely as the intended design would have performed, since the intended design required extreme technical competence in manufacturing stem cells suited for the purpose of injection to treat or stop the acceleration of macular degeneration, and such technical skill was not used for the product at issue.

541. The Defendant Pavillion Scientific, Inc.'s defective product directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

**COUNT 66      Strict Liability, Design Defect, Pavillion Foods, Inc.**

542. The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

543. Defendant Pavillion Foods, Inc., d/b/a Palm Supply researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to create a product that was not defective.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668

544. The product is defective because it was in a condition unreasonably dangerous to Jeannine Mallard when created, designed, manufactured, distributed, sold, and/or supplied by Defendant Pavillion Foods, Inc., d/b/a Palm Supply.

545. The product reached Jeannine Mallard without substantial change affecting that condition after creation, design, manufacture, distribution, sale, and/or supply by Defendant Pavillion Foods, Inc., d/b/a Palm Supply.

546. The product had a design defect because it failed to perform as safely as an ordinary consumer would expect when used as intended, causing permanent damage to Jeannine Mallard.

547. The product's risk of danger in the design outweighs the non-existent benefits of a therapy with no evidence of therapeutic value to a reasonable degree of scientific certainty.

548. Defendant Pavillion Foods, Inc., d/b/a Palm Supply, through its defective product, directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

**COUNT 67    Strict Liability, Design Defect, Pavillion Scientific, Inc.**

549. The Plaintiff adopts and realleges paragraphs 1 through 71 and further alleges:

550. Defendant Pavillion Scientific, Inc. researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard,

and therefore had a duty to create a product that was not defective.

551. The product is defective because it was in a condition unreasonably dangerous to Jeannine Mallard when created, designed, manufactured, distributed, sold, and/or supplied by Defendant Pavillion Scientific, Inc.

552. The product reached Jeannine Mallard without substantial change affecting that condition after creation, design, manufacture, distribution, sale, and/or supply by Defendant Pavillion Scientific, Inc.

553. The product had a design defect because it failed to perform as safely as an ordinary consumer would expect when used as intended, causing permanent damage to Jeannine Mallard.

554. The product's risk of danger in the design outweighs the non-existent benefits of a therapy with no evidence of therapeutic value to a reasonable degree of scientific certainty.

555. Defendant Pavillion Scientific, Inc., through its defective product, directly and proximately caused Jeannine Mallard serious permanent damage, as alleged in detail below.

**COUNT 68**   **Strict Liability, Failure To Warn, Pavillion Foods, Inc.**

556. The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

557. Defendant Pavillion Foods, Inc., d/b/a Palm Supply researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to warn of the risks associated with the use of the product.

558.  The product was under the control Defendant Pavillion Foods, Inc., d/b/a Palm Supply and was unaccompanied by appropriate warnings regarding the risk of severe ocular injuries. No warnings accurately reflect the risk, incidence, symptoms, scope, or severity of such injuries to Jeannine Mallard.

559.  Defendant Pavillion Foods, Inc., d/b/a Palm Supply downplayed the serious and dangerous side effects of the product to encourage sale of the product.

560.  The product was defective and unreasonably dangerous when it left the possession of Defendant Pavillion Foods, Inc., d/b/a Palm Supply in that it contained warnings insufficient to alert Jeannine Mallard to the dangerous risks and reactions associated with it, including, but not limited to severe ocular injuries. The particular risks were known, or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution. Even though the Defendant knew or should have known of the risks and reactions associated with the product, Defendant Pavillion Foods, Inc., d/b/a Palm Supply still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

561.  The product reached Jeannine Mallard without substantial change

affecting that condition after creation, design, manufacture, distribution, sale, and/or supply by Defendant Pavillion Foods, Inc., d/b/a Palm Supply

562.  The product was defective because the foreseeable risks of harm from the product could have been avoided by Defendant Pavillion Foods, Inc., d/b/a Palm Supply by providing reasonable instructions or warnings about the high likelihood of adverse events such as blindness, pain, and damage to the eye via the compounded product and the failure to provide those instructions or warnings makes the product unreasonably dangerous.

563.  Plaintiff Jeannine Mallard used the product in the manner as indicated by Defendant Pavillion Foods, Inc., d/b/a Palm Supply.

564.  The Plaintiff did not have the same knowledge as Defendant Pavillion Foods, Inc., d/b/a Palm Supply and no adequate warning was communicated to her.

565.  As a direct and proximate consequence of Defendant Pavillion Foods, Inc., d/b/a Palm Supply's actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

**COUNT 69     Strict Liability, Failure To Warn, Pavillion Scientific, Inc.**

566.  The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

567.  Defendant Pavillion Scientific, Inc. researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the

product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty to warn of the risks associated with the use of the product.

568.   The product was under the control Defendant Pavillion Scientific, Inc. and was unaccompanied by appropriate warnings regarding the risk of severe ocular injuries. No warnings accurately reflect the risk, incidence, symptoms, scope, or severity of such injuries to Jeannine Mallard.

569.   Defendant Pavillion Scientific, Inc. downplayed the serious and dangerous side effects of the product to encourage sale of the product.

570.   The product was defective and unreasonably dangerous when it left the possession of Defendant Pavillion Scientific, Inc. in that it contained warnings insufficient to alert Jeannine Mallard to the dangerous risks and reactions associated with it, including, but not limited to severe ocular injuries. The particular risks were known, or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution. Even though the Defendant knew or should have known of the risks and reactions associated with the product, Defendant Pavillion Scientific, Inc. still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

571.   The product reached Jeannine Mallard without substantial change affecting that condition after creation, design, manufacture, distribution, sale, and/or supply by Defendant Pavillion Scientific, Inc.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

572. The product was defective because the foreseeable risks of harm from the product could have been avoided by Defendant Pavillion Scientific, Inc. by providing reasonable instructions or warnings about the high likelihood of adverse events such as blindness, pain, and damage to the eye via the compounded product and the failure to provide those instructions or warnings makes the product unreasonably dangerous.

573. Plaintiff Jeannine Mallard used the product in the manner as indicated by Defendant Pavillion Scientific, Inc.

574. The Plaintiff did not have the same knowledge as Defendant Pavillion Scientific, Inc. and no adequate warning was communicated to her.

575. As a direct and proximate consequence of Defendant Pavillion Scientific, Inc.'s actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

**COUNT 70    Negligence, Product Liability, Pavillion Foods, Inc.**

576. The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

577. Defendant Pavillion Foods, Inc., d/b/a Palm Supply researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty of reasonable care to Jeannine Mallard, which is the care that a reasonably careful designer, manufacturer, seller, importer, distributor, and or/ supplier would use under like

circumstances.

578.   Notwithstanding this duty of care, Defendant Pavillion Foods, Inc., d/b/a Palm Supply breached its duty of care to Jeannine Mallard in the following ways:

a.   Negligently failing to manufacture the product with the highly skilled personnel necessary to make therapeutic stem cells;

b.   Negligently providing training to physicians and other professionals regarding therapeutic stem cell treatments;

c.   Negligently failing to design the product with the highly skilled personnel necessary to make therapeutic stem cells;

d.   Negligently allowing Jeannine Mallard access to the product when she did not meet the criteria for receiving the product;

e.   Negligently failing to warn Jeannine Mallard of the serious and dangerous side effects of the product to encourage sales of the product;

f.   Negligently failing to warn Jeannine Mallard of the risk, incidence, symptoms, scope, or severity of the injuries produced by the product to Jeannine Mallard;

g.   Negligently failing to provide reasonable instructions and warnings about the high likelihood of adverse events such as blindness, pain, and eye damage to Jeannine Mallard;

g.   Negligently exposing Jeanine Mallard to a product that included a substance labeled and intended to be used for laboratory purposes only and never intended to be used in a surgical setting on a human patient;

h.   Negligently exposing Jeanine Mallard to a product that was manufactured in part or entirely at the premises of a janitorial and cleaning supply business lacking the necessary controls, policies, procedures and protocols to ensure the quality, efficacy, sterility and integrity of the product;

i.   Negligently exposing Jeanine Mallard to a product that was manufactured without oversight or approval by the FDA;

j.   Other negligent failures as determined in discovery.

579.   As a direct and proximate consequence of Defendant Pavillion

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

Foods, Inc., d/b/a Palm Supply's actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

### COUNT 71   Negligence, Product Liability, Pavillion Scientific, Inc.

580.  The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

581.  Defendant Pavillion Scientific, Inc. researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the product, and directly advertised or marketed the product to Jeannine Mallard, and therefore had a duty of reasonable care to Jeannine Mallard, which is the care that a reasonably careful designer, manufacturer, seller, importer, distributor, and or/ supplier would use under like circumstances.

582.  Notwithstanding this duty of care, Defendant Pavillion Scientific, Inc. breached its duty of care to Jeannine Mallard in the following ways:

a.  Negligently failing to manufacture the product with the highly skilled personnel necessary to make therapeutic stem cells;

b.  Negligently providing training to physicians and other professionals regarding therapeutic stem cell treatments;

c.  Negligently failing to design the product with the highly skilled personnel necessary to make therapeutic stem cells;

d.  Negligently allowing Jeannine Mallard access to the product when she did not meet the criteria for receiving the product;

e.  Negligently failing to warn Jeannine Mallard of the serious and dangerous side effects of the product to encourage sales of the product;

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134   T 305.442.8666   F 305.285.1668

f.      Negligently failing to warn Jeannine Mallard of the risk, incidence, symptoms, scope, or severity of the injuries produced by the product to Jeannine Mallard;

g.      Negligently failing to provide reasonable instructions and warnings about the high likelihood of adverse events such as blindness, pain, and eye damage to Jeannine Mallard;

h.      Negligently exposing Jeanine Mallard to a product that included a substance labeled and intended to be used for laboratory purposes only and never intended to be used in a surgical setting on a human patient;

i.      Negligently exposing Jeanine Mallard to a product that was manufactured in part or entirely at the premises of a janitorial and cleaning supply business lacking the necessary controls, policies, procedures and protocols to ensure the quality, efficacy, sterility and integrity of the product;

j.      Negligently exposing Jeanine Mallard to a product that was manufactured without oversight or approval by the FDA;

k.      Other negligent failures as determined in discovery.

583.    As a direct and proximate consequence of Defendant Pavillion Scientific, Inc.'s actions, omissions, and misrepresentations, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

### COUNT 72      Negligence, Pavillion Foods, Inc.

584.    The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

585.    Defendant Pavillion Foods, Inc., d/b/a Palm Supply participated in the manufacturing, storing, keeping, and supplying of stem cell kits used by the other U.S. Stem Cell Defendants. Therefore, it had a duty to patients of U.S. Stem Cell Clinic, Inc. and U.S. Stem Cell Clinic LLC to exercise reasonable care in the provision of such services.

586.    Notwithstanding this duty of care, Defendant Pavillion Foods, Inc.,

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1688

d/b/a Palm Supply breached its duty by negligently manufacturing, storing, keeping, and supplying stem cell kits to the other U.S. Stem Cell Defendants for purposes of the administration of therapeutic stem cell treatment procedures.

587. As a direct and proximate consequence of Defendant Pavillion Foods, Inc., d/b/a Palm Supply's negligence, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

### COUNT 73    Negligence, Pavillion Scientific, Inc.

588. The Plaintiff adopts and realleges paragraphs 1 through 71 and further allege:

589. Defendant Pavillion Scientific, Inc. participated in the manufacturing, storing, keeping, and supplying of stem cell kits used by the other U.S. Stem Cell Defendants. Therefore, it had a duty to patients of U.S. Stem Cell Clinic, Inc. and U.S. Stem Cell Clinic LLC to exercise reasonable care in the provision of such services.

590. Notwithstanding this duty of care, Defendant Pavillion Scientific, Inc. breached its duty by negligently manufacturing, storing, keeping, and supplying stem cell kits to the other U.S. Stem Cell Defendants for purposes of the administration of therapeutic stem cell treatment procedures.

591. As a direct and proximate consequence of Defendant Pavillion Scientific, Inc.'s negligence, plaintiff Jeannine Mallard suffered permanent damage, as described in detail below.

**COUNT 74**     **Vicarious Liability for Kristen C. Comella's Acts, Pavillion**

**Foods, Inc.**

592.  The Plaintiff adopts and realleges paragraphs 1 through 71, and further alleges:

593.  At all times material to this cause of action, Kristen C. Comella was the principal, agent, servant, or employee of Pavillion Foods, Inc., d/b/a Palm Supply and was acting within the course and scope of her employment or agency and under its control.

594.  Therefore, Defendant Pavillion Foods, Inc., d/b/a Palm Supply is vicariously liable for the negligence and other wrongful conduct of Kristin C. Comella as set forth in the Counts alleged, Ms. Comella above, specifically, Counts 5, 10, 15, 20, 25, 30, 35, 36, and 37.

**COUNT 75**     **Vicarious Liability for Kristen C. Comella's Acts, Pavillion**

**Scientific, Inc.**

595.  The Plaintiff adopts and realleges paragraphs 1 through 71, and further alleges:

596.  At all times material to this cause of action, Kristen C. Comella was the principal, agent, servant, or employee of Pavillion Scientific, Inc. and was acting within the course and scope of her employment or agency and under its control.

597.  Therefore, Defendant Pavillion Scientific, Inc. is vicariously liable for the negligence and other wrongful conduct of Kristin C. Comella as set forth in the Counts alleged, Ms. Comella above, specifically, Counts

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668

5, 10, 15, 20, 25, 30, 35, 36, and 37.

## Damages Claimed by Jeannine Mallard

598. The Plaintiff Jeannine Mallard, as a direct and proximate result of the acts and omissions of the Defendants alleged above, has in the past and will in the future continue to suffer the following damages:

    a.    Bodily injury;

    b.    Pain and suffering;

    c.    Disability;

    d.    Disfigurement;

    e.    Loss of the capacity for the enjoyment of life;

    f.    Aggravation of pre-existing conditions;

    g.    Medical and hospital care and expenses;

    h.    Loss of earnings;

    i.    Loss of earning capacity in the future;

    j.    Rehabilitation expenses; and

    k.    Mental distress;

WHEREFORE, Plaintiff Jeannine Mallard demands judgment, Defendants for damages in an amount in excess of the jurisdictional limits of this Court exclusive of interest and costs, and all such other relief as the Court deems just and proper.

## Demand For Jury Trial

599. The Plaintiff demands trial by jury of all issues triable as of right.

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668

## Certificate Of Service

I HEREBY CERTIFY that the foregoing document was electronically filed with the Clerk of Court on this 28th day of June, 2018, electronically served on all counsel on the attached Service List, and served upon the newly added Defendants.

GROSSMAN ROTH YAFFA COHEN, P.A.
*Counsel for Plaintiff*
2525 Ponce de Leon Blvd., #1150
Coral Gables, Florida 33134
Telephone: (305) 442-8666
Facsimile: (305) 285-1668
Primary:   aby@grossmanroth.com

By:____/s/Andrew B. Yaffa_____
ANDREW B. YAFFA
Fla. Bar No.: 897310
aby@grossmanroth.com

By:____/s/Manuel A. Arteaga-Gomez
MANUEL A. ARTEAGA-GOMEZ
Fla. Bar No.: 18122
aag@grossmanroth.com

## Service List

Isaac J. Mitrani
Florida Bar No. 348538
Daniel J. Nagler
Florida Bar No. 056538
MITRANI, RYNOR, ADAMSKY & TOLAND, P.A.
301 Arthur Godfrey Road, Penthouse
Miami Beach, Florida 33140
Tel.: 305/358-0050; Fax: 305/358-0550
Designated Primary email:
imitrani@mitrani.com
dnagler@mitrani.com
Designated Secondary email: ctenn@mitrani.com;
miamidocketing@mitrani.com

*Counsel for Defendants U.S Stem Cell, Inc., f/k/a Bioheart, Inc., U.S. Stem Cell
Clinic LLC & Kristin C. Comella*

Jonathon P. Lynn, Esq.
CHIMPOULIS HUNTER & LYNN, PA
150 S. Pine Island Road, Suite 510
Plantation, FL 33324
(954) 463-0033 Phone
(954) 463-9562 Fax
E-Service: JLynn@chl-law.com
*Counsel for Defendants Shareen Greenbaum & Hollywood Eye Institute, PA*

Brion M. Ross, Esq.
BRION ROSS LAW GROUP, LLC
1 East Broward Boulevard
Suite 700
Fort Lauderdale, FL  33301
E-service: service1@brionrosslawgroup.com
*Counsel for Defendants Regenestem, LLC and Regenestem Network, LLC*

Law Offices Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, Florida 33134  T 305.442.8666  F 305.285.1668